Samuel Shibli **HADDAD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19890.

United States Court of Appeals
Ninth Circuit.

Aug. 3, 1965.

Certiorari Denied Oct. 25, 1965.
See 86 S.Ct. 193.

Jerry B. Riseley, Studio City, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Benj. S. Farber, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG, Circuit Judge, MADDEN, Judge, Court of Claims, and DUNIWAY, Circuit Judge.

DUNIWAY, Circuit Judge:

Haddad was convicted by a jury under an indictment, the material part of which reads as follows:

"The Grand Jury charges:
[18 U.S.C. § 1001]

On or about May 29, 1963, in Los Angeles County, within the Central Division of the Southern District of California, defendant SAMUEL SHIBLI HADDAD, in a matter within the jurisdiction of, and material to the Department of State, a department and agency of the United States knowingly and wilfully prepared and caused to be prepared a letter addressed to the American Consul, at Amman, Jordan, which letter related to one Mosa D. Abu Cobe, an alien, which letter was purportedly signed by A. M. Jeffress, M. D., Chief of Orthopedic Division, California Permanente Medical Group, which letter was false, fictitious and fraudulent as the defendant then and there well knew, in that the letter was a forged document."

We state the evidence most favorable to the government's contentions: Haddad is a citizen of the Hashemite Kingdom of Jordan and has been in this country for several years. He claims to have some kind of a medical degree from the Syrian University of Damascus, but is not licensed to practice medicine in California. Nevertheless, he called himself "Doctor." In 1963 he was employed in the hospital operated by the Southern California Permanente Medical Group as a cast room technician, an orderly. He became acquainted with a Mrs. Hilda Van Bergen and learned from her that she had a brother in Jordan, one Mosa

Cobe, who had some medical problem with his leg and wished to come to this country for treatment. Haddad thereupon composed and typed upon the stationery of the Southern California Permanente Medical Group a letter addressed to the American Consul at Amman, Jordan, on which he forged the signature of the Chief of Orthopedic Surgery, a Dr. Jeffress. In this letter he makes it appear that Dr. Jeffress had examined certain medical reports about Cobe, that the doctor believed that Cobe was in danger of losing his leg, that he considered facilities for treatment in Jordan and neighboring countries to be inadequate, that the Southern California Permanente Medical Group would undertake all of Cobe's medical, hospital, and medicinal expenses, and that he hoped that the Consul would issue a visa to permit Mr. Cobe to enter the United States. This letter was dated May 29, 1963. All of this was false. Haddad never discussed the matter with Dr. Jeffress, never showed him any medical reports about Cobe, and had no authority to write the letter, much less sign it.

Haddad placed the letter in an envelope addressed to the Consul and handed it to Mrs. Van Bergen. Apparently she was a little suspicious about it, but she accepted it upon his assurance that while he had typed the letter, Dr. Jeffress had himself signed it. She thereupon sent it to another brother of hers in Jordan, who presented it to the Consul. The Consul became suspicious and did not issue a visa on the basis of this letter.

Thereafter some question was raised about the letter in Haddad's proceeding seeking naturalization. He thereupon composed another letter, purportedly from Dr. Jeffress to himself, in which he had the doctor stating that he did authorize Haddad to send the May 29th letter to the Consul. This second letter was dated June 6, 1963 and a "Thermofax" copy of it was produced by Haddad at the trial. It has at the bottom a copy of a genuine signature of the doctor. However, the letter was typed by Haddad himself, and the signature upon it was obtained by cutting it from another document, joining it to the typed portion, and running the two pieces of paper through a "Thermofax" machine. In other words, this letter too was a fake.

Haddad also prevailed upon a young woman of 24, the fiancee of his brother, to sign a false affidavit prepared by him, in which she stated that she had overheard a telephone conversation between Haddad and Dr. Jeffress in which Dr. Jeffress stated that he had authorized Haddad to write and send the letter of May 29, 1963, but had not authorized him to state that the Southern California Permanente Medical Group would assume the expenses of Cobe's treatment. The young lady testified that the affidavit is false, and that there was no such conversation.

■ The foregoing evidence is obviously sufficient to sustain the conviction and Haddad does not claim that it is not. We consider his contentions, *seriatim*.

1. Haddad has caused to be brought up to this court as a part of the record on appeal certain proceedings in the United States District Court relating to his naturalization. These were not before the trial court in this case. They show that, when Haddad petitioned for naturalization, the Immigration and Naturalization Service recommended denial because of his failure to establish good moral character. One of the grounds for this recommendation was the forgery of the letter of May 29, 1963, although there were other grounds as well. The record further shows that the court disposed of the matter by accepting Haddad's request to withdraw his petition upon the condition that he would be ineligible to apply for naturalization again until the expiration of five years after May 29, 1963, the date of the forged letter. Haddad claims that this disposition of the matter constitutes punishment for the offense, so that his conviction in this case is double jeopardy.

■ There is nothing to the point, for two reasons. In the first place, the question was never raised at the trial.

Formerly, double jeopardy was raised by the plea of *autrefois acquit* or *autrefois convict*. Such special pleas have been abolished by Rule 12 of the Federal Rules of Criminal Procedure, but that rule also provides that any defense capable of determination without trial of the general issue may be raised before trial by motion, and that the failure to present it constitutes a waiver of it. The court, however, may grant relief for cause shown. Not only was there no such motion, but there was no request for relief. Levin v. United States, 9 Cir., 1925, 5 F.2d 598, 600, is authority for the proposition that failure to plead former jeopardy constitutes a waiver. The same rule has been applied since the adoption of the Federal Rules of Criminal Procedure. Harris v. United States, 8 Cir., 1956, 237 F.2d 274, 277.

Haddad attempts to escape from the waiver by claiming that the United States Attorney concealed the facts as to the disposition of the naturalization proceedings at the trial of this case. The contention is frivolous. Haddad was a party to the naturalization case and knew all about it. Moreover, there are several references in the transcript to the fact that there was such a proceeding.

■ For jeopardy to attach, the previous disability imposed by the court must have been a penal sanction inflicted as a result of a proceeding essentially criminal. Helvering v. Mitchell, 1938, 303 U.S. 391, 398, 58 S.Ct. 630, 82 L.Ed. 917 *ff*. In Haddad's case, no penal sanction at all was applied. He voluntarily withdrew his petition and accepted the condition of a five-year delay, no doubt because his attorney in that proceeding was aware that if he did not do so, his petition for naturalization would have been denied. There was nothing but the withholding of a privilege. Compare Bugajewitz v. Adams, 1913, 228 U.S. 585, 591, 33 S.Ct. 607, 57 L.Ed. 978. Kennedy v. Mendoza-Martinez, 1963, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, is not in point. It involved denaturalization as a penalty for certain offenses and is to be compared with Perez v. Brownell,

1958, 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603, in which denaturalization, because the naturalized citizen voted in a foreign election, was held not to be such a penalty. Neither case involved a claim of double jeopardy. Postponement of naturalization for failure by the immigrant to show good moral character, as required by 8 U.S.C. § 1427(a) (3) and (e), is not the essentially criminal penalty that will support a claim of double jeopardy.

■ 2. It is claimed that 18 U.S.C. § 1001, upon which the indictment rests, is unconstitutional. As applied to this case, it is not (see Cohen v. United States, 9 Cir., 1953, 201 F.2d 386, 391, and compare Turf Center, Inc. v. United States, 9 Cir., 1963, 325 F.2d 793, 795). One of counsel's contentions is that he does not know what "Department" means as it is used in the statute. 18 U.S.C. § 6 supplies the answer, in this case. It reads in part "As used in this title: The term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government." Section 1 of title 5 lists ten departments, the first of which is the Department of State. Under these circumstances, we do not understand the source of counsel's doubts. Compare United States v. Bramblett, 1955, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594.

■ 3. It is contended that the indictment is insufficient. We think that there is nothing in the point. The indictment follows the language of the statute. See Rule 7(c), Federal Rules of Criminal Procedure.

■ 4. It is contended that the trial court did not have jurisdiction. Reliance is placed on Section 2 of Article 3 of the Constitution, which confers original jurisdiction upon the Supreme Court "[i]n all Cases affecting Ambassadors, other public Ministers and Consuls * * *." The assertion is that the indictment charges that the forged letter was addressed to an American Consul.

Thus, says counsel, this is a case "affecting" a Consul. This point, too, is frivolous. Compare United States v. Ortega, 1826, 24 U.S. (11 Wheat.) 467, 6 L.Ed. 521; Farnsworth v. Sanford, 5 Cir., 1940, 115 F.2d 375. This case "affects" Haddad, not the Consul, even though what Haddad did may have "affected" the Consul. Moreover, as the foregoing cases and many others show, the original jurisdiction of the United States Supreme Court here relied upon is not exclusive. Furthermore, the provision of Article 3, Section 2, here invoked, does not relate to a United States Consul. See Ex parte Gruber, 1925, 269 U.S. 302, 46 S.Ct. 112, 70 L.Ed. 280.

5. It is contended that the venue was not properly laid. There is also nothing in this contention. Here the offense was completed in Jordan by the delivery of the letter to the Consul (see 18 U.S.C. § 3238), but it was commenced in the Southern District of California (see 18 U.S.C. § 3237(a)). Haddad was found in the Southern District of California, and thus the venue is proper under either Section 3237(a) or 3238.

Affirmed.