**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marvin MILLER et al., Defendants-Appellants.**

**No. 71–1850.**

United States Court of Appeals, Ninth Circuit.

Feb. 16, 1972.

As Amended on Denial of Rehearing March 21, 1972.

Harvey Giss (argued), Isman & Giss, Beverly Hills, Cal., for defendants-appellants.

Brian J. O'Neill, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., Michael Heuer, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, KOELSCH and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This is an obscenity case tried by the court without a jury. Special findings of fact were waived. Only the defendant Marvin Miller appealed. As to Covina Publishing Inc., this panel has made an order dismissing any purported appeal for lack of jurisdiction, since no notice of appeal was filed by Covina.

A series of sentences was imposed on appellant Miller. There were two sets or series of counts, and on each count of which Miller was convicted, a sentence of one year was imposed. The sentences on Counts 1, 3, 4, 6, 8, 9, 11, 13 and 14 were made to run concurrently. The sentences on the second series of counts, 18, 19, 20, 21, 22 and 24, were also made to run concurrently. The judgment then provided that the second series of sentences should run consecutive to the first series of sentences. Thus, the sentence was a two-year term. A separate fine of $1,500.00 was imposed on each count, making a total of $22,500.00.

All of the counts charged a violation of 18 U.S.C. § 1461, mailing obscene matter. All of the first series of counts except No. 14 allege the mailing of obscene, lewd, indecent, lascivious and filthy advertisements. Count 14 alleges the mailing of an advertisement of similar obscene matter, and notices stating how, from whom, and by what means the advertised obscene material might be obtained. These counts will be referred to as the "advertising counts."

The counts in the first series concerned advertisements, which in poor grade pictures, depicted intercourse, abnormal sexual relations, perversion and in some cases sex orgies involving groups of persons. Each advertisement contained printed matter puffing the sexual contexts of the material which

was advertised and describing when and how the material could be obtained. Some of the material contains pictures of sex orgies and printed boxes across the advertisement reading "Sex Orgies."

The advertisement in Count 9 proclaims in a box across the page, "Lesbian Techniques" and advertises the picture magazines, "Continental Cuties," "Parley," "Upon," which magazines were later the subject matter of Count 24, and "Lovers," which magazine was later the subject of Count 22. Reprints of some of the photographs from the magazines were included.

Count 11 contains advertisements showing intercourse, acts of perversion between females and between males and females. The advertisements referred to and contained copies of photographs from the magazines "Pussy Willow," "Groovy Gypsy," and "Topsy-Turvy," which magazines were later the subjects of Count 18.

Count 13 contains advertisements for close-up photographs centering on female genitals, referred to in the advertising as "Different—Exciting Color" and "Closeup Color."

In the advertising counts, the stipulated testimony of the recipients showed the matter was unsolicited. In Counts 4, 6 and 9 there were juvenile recipients. In Count 3, the mailing was to the Y.W.C.A.

■ It is clear that pandering is involved in all the counts of the first series. Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), like this case, was a prosecution under 18 U.S.C. § 1461.

Ginzburg v. United States defines pandering as "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers." [p. 467, 86 S.Ct. p. 945] The phrase was borrowed from the concurring opinion of Chief Justice Warren in Roth v. United States, 354 U.S. 476, 495–496, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1959).

"Many cases indicate that product advertising is at least less rigorously protected than other forms of speech." Banzhaf v. F. C. C. (1968) 132 U.S. App.D.C. 14, 405 F.2d 1082, 1101. See Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) (Ordinance valid forbidding distribution of commercial advertising material in the streets); Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951) (Ordinance valid regulating door-to-door solicitation of magazine subscriptions); Rowan v. United States Post Office Department (C.D.Calif.1969, three-Judge court), 300 F.Supp. 1036, affirmed, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (Constitutionality of 39 U.S.C. § 4009 permitting addressees to require that they be deleted from mailing lists for sexually provocative advertisements).

This court's decision in Miller v. United States (1970) 9 Cir., 431 F.2d 655, cert. pending, No. 70–43, involved advertisements mailed by the same Miller and conviction was affirmed. Included in the offending matter was the magazine "The Name is Bonnie" which the court said, "depicts and emphasizes the female sex organs without any restriction. There is no attempt at artistic composition either in background, surroundings or poses." [p. 658] In our case, Counts 9, 13, 14, 18, 22 and 24 contain such photographs.

This case is a stronger case than *Ginzburg*. We have no doubt as to the validity of the convictions in the first series of counts, Nos. 1, 3, 4, 6, 8, 9, 11, 13 and 14.

The second series of counts allege mailing of obscene, indecent, lascivious and filthy matter in violation of 18 U.S.C. § 1461. All the mailings were unsolicited. Count 18 concerns three magazines with photographs, part in black and white and part in color, to-wit: "Groovy Gypsy," "Pussy Willow" and "Topsy-Turvy." All the photographs center close-up on the female genitals, depicting females with legs spread and

bodies in grotesque positions. There is no text.

Count 22 concerns the magazine "Lovers" with photographs, part in black and white and part in color, showing male and female genitals. There are two to four persons, male and female, in each picture. The pictures generally center close-up on female genitals, generally with legs spread and with the female bodies in grotesque positions. There is no text.

Count 24 concerns four magazines, with photographs part in black and white and part in color: "Continental Cuties," "Parley," "Upon," and "Special." The pictures center close-up on female genitals, generally with legs spread and with the bodies in grotesque positions. There is no text.

Counts 19, 20 and 21 concern books. Count 19 involves the book "Go Down, Bruno," which describes among other things, bestiality between a woman and a dog, including intercourse.

Count 20 concerns a book "Love Letters of Lauralee." The book describes, among other things, perversion and sodomy between men and women, and perversion between women.

Count 21 concerns a book "My Sexy Aunt." It describes lesbian activities and perversion between women, incest between a father and an adult daughter and incest between an adult brother and sister. Included is sodomy between men and women.

Both sides called expert witnesses. The testimony conflicted as to whether the matter (1) appealed to a prurient interest, (2) had utterly no redeeming social value, and (3) affronted contemporary community standards. An expert witness, Carolyn See, with a doctorate in literature, testified by stipulation for the defense that the books in Counts 19, 20 and 21 were not obscene. She also testified that she had never read a novel which she would classify as being utterly without a redeeming social value, and thus impliedly testified she had never read an obscene novel.

 There remains the question as to whether obscenity is a question of fact or one of law. United States v. A Motion Picture Film (2 Cir. 1968) 404 F.2d 196. There, a panel of the Second Circuit, Judge Lumbard dissenting, held the question is one of law. We prefer the dissenting views of Judge Lumbard. We therefore prefer to accept the trial court's decision, since findings were waived, on each of the three issues above and on the ultimate issue of obscenity. But assuming the majority holding of the Second Circuit, supra, is correct, we hold the material obscene as a matter of law.

We hold that each of the convictions in each of the two series of counts is valid.

The judgment is affirmed as to appellant Miller.