UNITED STATES of America,
Petitioner,

v.

Honorable Irving HILL, United
States District Judge,
Respondent.

No. 71–2485.

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1972.

Rehearing Denied March 30, 1973.

Larry Flax, Asst. U. S. Atty. (argued), Eric A. Nobles, Thomas H. Kotoske, Asst. U. S. Attys., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for petitioner.

Edwin M. Rosendahl (argued), Joseph Taback (argued), Beverly Hills, Cal.,

Los Angeles, Cal., for real parties in interest.

Before KOELSCH, DUNIWAY and KILKENNY, Circuit Judges.

DUNIWAY, Circuit Judge:

The Government seeks writs of mandamus directing respondent judge to vacate his order dismissing indictments in cases pending before him in the District Court of the United States for the Central District of California. [United States of America v. Linetsky, et al., No. 7145; United States of America v. Carlo, et al., No. 7142].

## FACTS

On December 22, 1970, a 36-count indictment was returned against Linetsky and others charging, in substance, one or more of the defendants, real parties in interest here, with violations of Title 18 U.S.C. § 1461, in knowingly depositing obscene advertisements in the United States Mail for carriage and delivery. Each defendant pled not guilty. Also on December 22, 1970, an eleven-count indictment was returned against defendant Carlo and others charging, in substance, the same kind of violations of the same statute on obscenity. Each defendant pled not guilty.

Later, the parties in each case stipulated, for the purpose of minimizing discovery, that the materials that appeared in the stipulation were copies of the materials underlying the indictment.

The *Linetsky* case was consolidated with the *Carlo* case for the purpose of hearing on defendants' motion to dismiss, made pursuant to Rule 12, F.R. Crim.P. A hearing on the motions to dismiss was continued to August 5, 1971. On July 20, 1971, the Government filed, in each case, a memorandum in opposition to the hearings on the respective motions to dismiss. This opposition contained the following statement:

"Initially, the Government again reasserts its objection to the hearing to be had on July 30, 1971 [the hearing having now been continued to August 5, 1971]; and, by its participation therein does not intend to convey that it, in any way, approves of such hearing, nor does the Government by any such participation, intend to waive such objection or the right of any Appellate redress that may inure to it as a result of such hearing. The Government's sole purpose for participation in such hearing is to fully, as possible, apprise the Court of its position relative to such hearing."

On August 5, 1971, despite the opposition of the Government, the trial judge held hearings on defendants' motions to dismiss and, over the opposition of the Government, allowed defendants to introduce into evidence the stipulated materials together with certain materials (magazines and a film) previously adjudicated as protected under the First Amendment, in unrelated obscenity prosecutions. The Government, solely for the purpose of apprising the judge of its position and to protect its interest in the prosecution, offered three advertisements from the case of Miller v. United States, 9 Cir., 1970. 431 F.2d 655 [CA 9, 1970]. The trial judge then made a pre-trial determination that the materials, which formed the basis of both of the indictments, were not obscene as a matter of law and dismissed both indictments.

### Issues Presented

(1) Did the Government have a right of appeal to either the Circuit or the Supreme Court?

(2) Did the judge's action place the defendants in jeopardy? If so, should the writ issue?

As will be seen, the first question also involves the second question, and an affirmative answer to the second question also provides an answer to the first question.

1. *Right to appeal.*

Real parties in interest argue that the Government could have appealed, but did not, and that therefore the writ does not lie. We withheld decision in this litiga-

tion pending the outcome in United States v. Weller, 9 Cir., 1972, 466 F.2d 1279, which was to follow the Supreme Court's remand in United States v. Weller, 1971, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26.

We need not decide, however, whether the two *Weller* cases preclude an appeal by the Government here. The Criminal Appeals Act, as amended, 18 U.S.C. § 3731, permits the Government to appeal in certain cases, "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution," or "after the defendant has been put in jeopardy." Because we are of the opinion that the real parties in interest have been put in jeopardy, we hold that the Government has no right to appeal.

■ The law as to when a defendant has been put in jeopardy—when jeopardy "attaches"—is technical, but not so technical as to permit a holding in this case that jeopardy has not attached. The general rule is stated in McCarthy v. Zerbst, 10 Cir., 1936, 85 F.2d 640, 642:

> "The general rule is that a person is not in jeopardy until he has been arraigned on a valid indictment or information, has pleaded, and a jury has been impaneled and sworn; and where a case is tried to a court without a jury, jeopardy begins after accused has been indicted and arraigned, has pleaded and the court·has begun to hear· evidence." [Footnotes omitted.]

*See also* Clawans v. Rives, 1939, 70 U.S. App.D.C. 107, 104 F.2d 240, 242.

■ These cases meet the foregoing criteria. In each, the defendants had been arraigned on valid indictments and had pled. The court then "heard" evidence going to the general issue—whether the matter mailed was "obscene," a necessary element of the offense. Having considered the evidence, the court ruled, "as a matter of law," that the matter was not obscene. The court did not hold that the indictments were defective. On their faces, they were valid. What the court held, in substance, was

that the defendants before it were not guilty. Surely, a court is "hearing" the evidence just as much when it receives written evidence as when it hears oral testimony of a witness. Many cases are tried solely on written evidence, sometimes on a stipulation of facts, sometimes on a transcript of a preliminary hearing or of a preliminary motion, such as a motion to suppress, sometimes upon evidentiary exhibits alone. A prime example is Selective Service cases, which are frequently tried upon the Selective Service file alone. We have held that a trial of this type places the defendant in jeopardy. United States v. McFadden, 9 Cir., 1972, 462 F.2d 484.

In this case the evidence was received and the court's decision was made in a proceeding denominated a motion to dismiss rather than in a "trial." But that fact is not conclusive. This was made clear long ago in United States v. Oppenheimer, 1916, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. There, an indictment had been dismissed on the ground that the charge was barred by the statute of limitations, a view of the statute of limitations later held erroneous by the Supreme Court in another case. A new indictment was procured, defendant's plea of double jeopardy was overruled, and he was convicted. On appeal, the conviction was reversed. Speaking for a unanimous Court, Mr. Justice Holmes said:

> "Upon the merits the proposition of the government is that the doctrine of *res judicata* does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn rev-

erence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue. United States v. Kissel, 218 U.S. 601, 610, 31 S.Ct. 124, 54 L.Ed. 1168, 1179, but if upon a special plea of the statute, permits the defendant to be prosecuted again . . . "Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defendant upon the ground that the prosecution is barred goes to his liability as matter of substantive law, and one judgment that he is free as matter of substantive law is as good as another. A plea of the statute of limitations is a plea to the merits, United States v. Barber, 219 U.S. 72, 78 [31 S.Ct. 209, 55 L.Ed. 99, 101], and however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution. We may adopt in its application to this case the statement of a judge of great experience in the criminal law: 'Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, that adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offence. . . . In this respect the criminal law is in unison with that which prevails in civil proceedings.' Hawkins, J., in The Queen v. Miles, 24 Q.B.D. 423, 431." 242 U. S. at 87–88, 37 S.Ct. at 69.

See also Dear Wing Jung v. United States, 9 Cir., 1962, 312 F.2d 73, 74.

The district judge did not think that he was holding a trial; he believed that jeopardy had not attached. That was equally true in McFadden, supra. Moreover in Oppenheimer, supra, there had been no trial at all in the conventional sense, but merely a motion to dismiss, apparently without the reception of any evidence. What was controlling was that the judge had rendered a decision for the defendant "as a matter of substantive law." It may be that in Oppenheimer the Court was applying res judicata or collateral estoppel rather than, or as much as, double jeopardy, although that is by no means clear. The distinction, if any, is immaterial. In Ashe v. Swenson, 1970, 397 U.S. 436, 445, 90 S.Ct. 1187, 25 L.Ed.2d 469, the Court held that the principle of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. See also Simpson v. Florida, 1971, 403 U.S. 384, 385, 91 S.Ct. 1801, 29 L.Ed.2d 549. McFadden rests squarely on jeopardy. There, as here, the court received evidence going to the general issue, and it rendered a decision which was, in substance though not in form, a finding that the defendants were not guilty as a matter of law.

It may also be that the trial judge's procedure was unauthorized and improper. Perhaps, had the Government applied to us for relief before the judge heard the motion and received evidence in support of it, we could have granted relief under the All-Writs Act. But the Government did not do so, and the trial judge did proceed to receive evidence and to rule. The decision that was held to prevent a second trial in Oppenheimer, supra was erroneous. The decision that was held to be a bar in McFadden, supra, had been vacated by the Supreme Court. In Fong Foo v. United States, 1962, 369 U.S. 141, 82 S. Ct. 671, 7 L.Ed.2d 629, the Court assumed, as the Court of Appeals had held, that the first decision was "based upon an egregiously erroneous foundation," but held, nevertheless, that it constituted former jeopardy.

If in this case the judge had proceeded to trial in the usual way, with or

without a jury, and if the Government had then, as its first move, offered in evidence the stipulated exhibits, and if the judge had then ruled, as a matter of law, that those exhibits were not obscene, and had entered a judgment of acquittal, there could be no doubt that the defendants had been placed in jeopardy, however erroneous the acquittal might be. Fong Foo v. United States, *supra*. *See also* Green v. United States, 1957, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed. 2d 199. Such a procedure would have deprived the Government of its asserted right to have the jury decide the issue of obscenity just as much as did the decision in this case. That is, in substance, what happened in this case. And under *Oppenheimer* and *McFadden, supra*, it is substance, not form, that governs.

■ It is of course true that many preliminary proceedings and motions, where evidence is received, do not amount to jeopardy. Thus, a preliminary hearing does not put the defendant in jeopardy. Collins v. Loisel, 1923, 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062; United States v. Malfetti, 3 Cir., 1954, 213 F.2d 728, 729–730; United States v. Grimes, 5 Cir., 1970, 426 F.2d 706, 708; Draper v. Rhay, 9 Cir., 1966, 358 F.2d 304, affirming, E.D.Wash., 1964, 242 F.Supp. 829, 833–834. So also, a motion to suppress evidence, in which testimony is taken from both sides, does not place the defendant in jeopardy. United States v. Williams, 4 Cir., 1955, 227 F.2d 149, 152. Double jeopardy does not occur in such cases because the court is not deciding the general issue—guilt *vel non*. In contrast, in the present case, guilt is precisely the issue that the court decided; it held that the material received in evidence was not obscene, and dismissed the cases. In substance, though not in form, that was an acquittal.

2. *Should the writ issue?*

■ There being no right to appeal, the remaining question is, should the writ issue? We think not. Issuance is discretionary. Here, to issue the writ would accomplish nothing. Having set aside his order, the district judge would have to dismiss again on the ground of double jeopardy. We recognize that former jeopardy is usually raised by plea; it is a defense that can be waived. But we see not the slightest possibility of waiver here.[1] We

---

1. In the entire record of the proceeding before the district judge that is before us, there is but one reference to the subject of double jeopardy. At the conclusion of the hearing, when the judge made his order, he also gave a brief oral discourse on the advantages of the procedure that he was using. In the course of doing so, he said: "This procedure preserves the government's right to appeal since jeopardy has not attached; . . . ." Neither counsel for the government nor counsel for the real parties in interest made any comment about this statement. Whether counsel for the defendants then believed that the statement was correct cannot be ascertained from the record. Certainly, however, there was no express waiver of the plea of double jeopardy on their part. What they got, as we have shown, was a truncated trial on the merits before the judge. Whether they believed that such a trial caused jeopardy to attach is immaterial.

Before this court memoranda were filed in opposition to the petition by two sets of real parties in interest. One of them, on behalf of Carlo, contains no reference whatever to double jeopardy. In the other, on behalf of the Linetsky defendants, in arguing that the government had a right to appeal, counsel said this: "Since the case at bar had not been to trial—no jury was sworn, no witnesses called—it is clear that defendants were not put in jeopardy." This is the sole reference to the subject before this court. It is nothing more than an argument based upon a mistaken view of the law. We leave it to the reader to decide how vehement a disclaimer or how resolute a position it can be said to be. We do not think that a mistaken legal argument before this court in opposition to the writ is any more a waiver by counsel of a defense to which his clients are entitled than is a failure to disagree with a statement on the subject volunteered by the district judge.

We note, too, that counsel for the Linetsky defendants from whose memorandum we have quoted, urged at oral argument that the ruling of the district judge was

should not waste judicial manpower by requiring further and, in our view, meaningless further proceedings in the trial court. We should exercise our discretion to deny mandamus. *See* Duncan Townsite Co. v. Lane, 1917, 245 U.S. 308, 311–312, 38 S.Ct. 99, 62 L.Ed. 309; United States v. Carter, 9 Cir., 1959, 270 F.2d 521, 524; In re Welch Mfg. Co., 1 Cir., 1913, 201 F. 519. That is precisely the result reached by the Supreme Court in Fong Foo v. United States, *supra*.

In United States v. Gray, 9 Cir., 1971, 448 F.2d 164, we declined to consider whether double jeopardy was involved, leaving the question to the district court. Here, however, the situation is different. Real parties in interest urge that the writ should be denied because the Government could have appealed and did not do so. That contention puts in issue, before us, the jeopardy question because of the language of the Criminal Appeals Act. Because we must decide the question, there is nothing to be gained by requiring the district judge to decide it again.

Writ denied.

KILKENNY, Circuit Judge (dissenting):

We should not speak in this proceeding on former jeopardy, an issue which was not raised in the district court, and which is vehemently disclaimed by the defendants, the real parties in interest. Since I differ with the majority on the nature of the issues presented by the petition and the responses thereto, I restate them as follows:

(1) did the government have a right of appeal from the district court judgment to either the Circuit Court of Appeals or the Supreme Court? and,

(2) did the respondent have power to hold a pre-trial hearing, over the objection of the government, on the issue of obscenity, and thus deprive the latter of a trial on the merits?

## RIGHT OF APPEAL

(1) At the outset, we are faced with respondent's argument that petitioner had an adequate remedy by appealing to this court or to the United States Supreme Court and, having failed to do so, is not entitled to seek a writ of mandamus. We withheld decision in this litigation pending the outcome in United States v. Weller, 466 F.2d 1279 (CA9 1972). Although the decision here is not absolutely controlled by the court's conclusions in *Weller*, for apparent distinctions are manifest.[1] I would hold that the overall rationalization in *Weller* is applicable and that the petitioner could not appeal the decision of the lower court to this court or the Supreme Court. *Weller* was remanded to the Circuit Court for decision after the Supreme Court concluded that the appeal was not properly before it. United States v. Weller, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971). In United States v. Pinkus, 466 F.2d 1405 (CA9 1972), on a factual background strikingly similar to that before us, a panel of this court recently invoked *Weller*[2] and held that an appeal did not lie to the Circuit Court.

Accordingly, respondent's argument that mandamus cannot be used as a substitute for an appeal is here of no avail.

## ON THE MERITS

(2) I commence with the premise that the petitioner had a constitutional right to a jury trial.[3] Singer v. United States, 380 U.S. 24, 36–37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); United States v.

---

on the merits, so that jeopardy had attached, under the decision of the Seventh Circuit in United States v. Ponto, 1971, 454 F.2d 647, 653, *id.*, in banc, 1971, 454 F.2d 657, 663–664, and fn. 10, and that therefore the writ should not issue.

1. Weller was indicted for failure to submit for induction. [50 U.S.C. App. § 462].

2. Circuit Court decision.

3. Article III, § 2 of the United States Constitution provides, among other things, that: " . . . The trial of all crimes, except in cases of impeachment, shall be by jury . . . . "

Gray, 448 F.2d 164, 168 (9 Cir. 1971); United States v. Ferguson, 448 F.2d 169 (9 Cir. 1971), cert. denied 405 U.S. 934, 92 S.Ct. 941, 30 L.Ed.2d 809 (1972). For that matter, the right, if not waived, is implicit in Rule 23(a), FRCrimP.[4] Here, the petitioner, rather than consenting, consistently objected to the pre-trial proceedings on the issue of obscenity and participated in the proceedings only on the insistence of the respondent. Indeed, it would seem that respondent was of the belief that he was trying an issue of law, rather than one of fact. I quote from one of the final paragraphs of his decision.

"Alright. That brings us to the holding in the case. My precise holding is that the motion to dismiss will be granted as to each count of each case before me. I find each piece of these advertisements in issue *not obscene as a matter of law.*" [Emphasis added.]

The respondent's conclusions on the subject were probably influenced by decisions such as United States v. A Motion Picture Film, 404 F.2d 196 (CA2 1968). Our intervening decision in United States v. Miller, 455 F.2d 899, 902 (CA9 1972), declines to follow the majority in *A Motion Picture Film* and holds that obscenity is a question of fact, rather than one of law. Clearly, the respondent was in error in proceeding over the express opposition of the petitioner.

True enough, a number of district courts have followed the procedure invoked by the lower court. These are not controlling.

United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969), upon which respondent relies, had nothing whatsoever to do with obscenity. It was a tax case. In United States v. Roth, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498 (1957), and Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964), the Supreme Court was speaking of the powers and duties of an appellate court in treating constitutional problems. I quote from *Roth*, page 497, 77 S.Ct. page 1315:

" . . . Every communication has an individuality and 'value' of its own. The suppression of a particular writing or other tangible form of expression is, therefore, an *individual* matter, and in the nature of things every such suppression raises an individual constitutional problem, *in which a reviewing court must determine for itself whether the attacked expression is suppressable within constitutional standards. . . .*" [Emphasis added.]

Manifestly, the Supreme Court was speaking of the particularized judgment which appellate courts must make for themselves on constitutional issues. Nowhere is it suggested that a trial court may take over, pre-try and decide this type of constitutional issue in a pre-trial hearing. In Childs v. Oregon, 431 F.2d 272 (CA9 1970), rev'd. 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971), the Court is speaking of the duty of an appellate court to examine the evidence and determine if it is of such a nature to be properly submitted to the jury. The language of the opinion does not touch the problem here presented.

Respondent quotes extensively from United States v. Head, 317 F.Supp. 1138 (E.D.La.1970). There, the indictment identified with great specificity the matter alleged to be obscene, and could be distinguished on that ground alone. Beyond that, the element of pandering was there disclaimed by the government. The bald statement, unsupported by authority, that a trial court is required to rule on the constitutional question of obscenity *vel non* when that issue is properly presented in advance of trial, does

---

4. Rule 23, FRCrimP.

"(a) *Trial by Jury.* Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the *consent of the government.*" [Emphasis added.]

not impress me and I would decline to follow it.

I have examined the other authorities pressed upon us by the respondent and in the answers and brief of the defendants. I find that most of them do not deal with obscenity, or do not treat obscenity at the trial level as one of fact. Of course, we are bound in that respect by the *Miller* decision.

The majority concede that "the trial judge's procedure might well be unauthorized and improper." It is intimated that if the government had applied to us for relief that it might have been granted under the "All Writs Act". 28 U.S.C. § 1651. I assume this means an application for a Writ of Prohibition. On this point, we should keep in mind that the matter was pending on the defendant's motion to dismiss under Rule 12, FRCrimP. The rule requires the court to determine the motion before a trial unless deferred. The same rule states that an issue of fact shall be tried by a jury if a jury trial is required under the constitution or an Act of Congress. Until the hearing the government could not have known that the judge might decide the motion on what he believed to be an issue of law. The government could not have known of the judge's position until the judge made his decision.

Where, as here, a district judge exceeds his powers under the Federal Rules of Criminal Procedure in granting a final order, the government is entitled to either a writ of mandamus or a writ of prohibition or both to require the district judge to vacate the invalid order. United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). The judgment of dismissal in this case is a final order of the type mentioned in Will v. United States, 389 U.S. 90, 97–98, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), as justifying the issuance of a writ of mandamus.

## DOUBLE JEOPARDY

Double jeopardy is a defense which may be waived. Leser v. United States, 358 F.2d 313 (CA9 1966), cert. dismissed 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49; Haddad v. United States, 349 F.2d 511 (CA9 1965), cert. denied 382 U.S. 896, 86 S.Ct. 193, 15 L.Ed.2d 153; Himmelfarb v. United States, 175 F.2d 924 (CA9 1949), cert. denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. It is a defense which must be pleaded. United States v. Hoyland, 264 F.2d 346 (CA7 1959), cert. denied 361 U.S. 845, 80 S. Ct. 98, 4 L.Ed.2d 83, rehearing denied 361 U.S. 904, 80 S.Ct. 212, 4 L.Ed.2d 159. We should not act as counsel for the defendants and here assert in their behalf the defense of former jeopardy. That is not our function. This is particularly true where the complete record of what occurred is not before us, where the trial judge was certain that former jeopardy did not attach,[5] and where at least some of the defendants were resolute in their position that double jeopardy was not involved. Could it be that the defendants, by their actions both here and in the district court, have waived their alleged defense of double jeopardy? The issue is not before us and should be resolved in the lower court.

This is not a case such as United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), where a jury was empaneled, the case tried and a verdict of guilty returned and then set aside.

\*       \*       \*       \*       \*

"This procedure preserves the Government's right to appeal since *jeopardy has not attached;* and this procedure, if the decision is to dismiss, may save the litigants from going to trial unnecessarily." (Emphasis supplied.)

---

5. "The Court: Well, all right. The record I think is clear enough on this.

"The technique here employed of determining under a pretrial motion to dismiss whether the material which is the basis of the indictment is colorably obscene or whether it is not obscene as a matter of law is a proper one, though it has not as yet been approved by any Court of Appeals so far as I can determine."

## CONCLUSION

I would follow the procedures outlined in United States v. Gray, *supra*, p. 168 and United States v. Ferguson, *supra*, and direct the issuance of a writ of mandamus requiring respondent to vacate and set aside the orders dismissing the indictment. Further, I would direct that respondent reinstate the indictment and proceed to trial in accordance with established practice and procedure.