**UNITED STATES of America, Appellant,**

**v.**

**Nelson E. "Buck" SANFORD et al., Appellees.**

No. 73–3016.

United States Court of Appeals, Ninth Circuit.

Sept. 24, 1974.

Keigh L. Burrowes, Asst. U. S. Atty. (argued), Billings, Mont., for appellant.

Ralph S. Wright, of Sandall, Moses & Cavan (argued), Billings, Mont., for appellees.

Before HAMLEY, MERRILL and SNEED, Circuit Judges.

OPINION

PER CURIAM:

The Government appeals from dismissal of a seven count indictment against Nelson Sanford and his sons, Rodney, Lon and Rick Sanford. We find that this court lacks jurisdiction to hear this appeal and therefore dismiss it.

The indictment alleged the following facts. The Sanfords are engaged in the business of outfitting and guiding big

game hunts in Montana. Rodney Sanford telephoned Paul Bagalio at Bagalio's home in Vermont on December 22, 1971. During this conversation, Rodney offered his services as a guide for late season elk and Rocky Mountain bighorn sheep hunting in Montana. A second conversation to the same effect was held on December 29, at which time the hunts at issue in this case were arranged. Subsequently, Bagalio telephoned Rodney and obtained permission to bring along Bruce Parker, who Bagalio described as "a friend and business associate."

The Sanfords were unaware that both Bagalio and Parker were acting in undercover capacities for the Bureau of Sport Fisheries and Wildlife and were authorized by federal officials to do whatever was necessary to complete their investigations.

Bagalio and Parker arrived in Montana early in January, 1972. On January 6, they were transported by Lon, Rick and Rodney Sanford from Bridger, Montana to Greybull, Wyoming, where they secured lodging for the night. The next morning, the party of five boarded a helicopter and were transported to the Crow Indian Reservation in Montana. At this time, they penetrated the boundaries of the Reservation in search of elk. Parker, at the direction of Rodney Sanford, shot at and knocked down a bull elk; the *coup de grace* was administered by Rodney Sanford. Shortly thereafter, Rick Sanford returned by helicopter and transported the party and the cape of the elk from the Reservation back to Greybull, Wyoming. The cape was then carried by Lon, Rick and Rodney Sanford to Bridger, Montana. Bagalio and Parker apparently joined the Sanfords in Montana on January 10.

A second hunt was planned but first postponed because of inclement weather. The expedition finally got under way on February 2, 1972. At this time, Bagalio, Parker and Rodney Sanford again penetrated the exterior boundaries of the Crow Indian Reservation. At the direction of Rodney Sanford, Bagalio shot and killed a second elk. Rodney caped the elk, and the party, leaving the carcass behind, left the Reservation.

Within the next few days, Rodney Sanford guided Bagalio and Parker on a hunt for Rocky Mountain bighorn sheep. Rodney led the party into Yellowstone National Park, where he pointed out a sheep for Bagalio to shoot. Bagalio shot and killed the sheep. Rodney removed the cape, head and horns from the sheep, leaving the carcass where it fell.

A seven count indictment was returned against the Sanfords. In Count I, Nelson, Rodney, Lon and Rick were charged under 18 U.S.C. §§ 2, 43, and 371 with conspiracy to transport in interstate commerce animals killed in violation of R.C.M. § 26–307(3) and 16 U. S.C. § 26. Count II charged Lon and Rodney Sanford with the January 8 illegal entry on the Crow Indian Reservation, 18 U.S.C. § 1165, and further charged Nelson and Rick Sanford with aiding and abetting the commission of the offense, 18 U.S.C. § 2. Count III charged Rodney Sanford for a similar offense with respect to the February 2 entry onto the Crow Indian Reservation; Nelson, Rick and Lon Sanford were charged with aiding and abetting this offense. Count IV charged Rodney Sanford with illegal hunting within Yellowstone National Park, 16 U.S.C. § 26. The remaining three counts concerned alleged violations of the Lacey Act, 18 U.S.C. § 43. In Count V, Rodney, Lon and Rick were charged with interstate transportation of the elk killed on January 8; the elk was said to have been killed in violation of federal, 18 U.S.C. § 1165, and state, R.C.M. § 26–307(3), laws. Count VI made the same charge against Rodney Sanford with respect to the elk killed on February 2. Finally, Count VII made an identical charge against Nelson Sanford for the transportation of parts of the bodies of the two dead elk from Billings, Montana, to Seattle, Washington; Rodney, Lon and Rick Sanford were charged with aiding and abetting the commission of this offense.

Trial of this case began on February 5, 1973. A mistrial resulted by reason of a hung jury. Prior to retrial the district judge granted the defendants' motion to dismiss the indictment. The Government appeals from the grant of this motion.

Our jurisdiction in this case must be found, if at all, in 18 U.S.C. § 3731, as amended, which grants to the Government the right to appeal the dismissal of an indictment "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

In United States v. Hill, 473 F.2d 759, 761 (9th Cir. 1972), this Court quoted with approval the general rule as to when a defendant has been put in jeopardy appearing in McCarthy v. Zerbst, 85 F.2d 640, 642 (10th Cir., 1936) which is as follows:

> The general rule is that a person is not in jeopardy until he has been arraigned on a valid indictment or information, has pleaded, and a jury has been impaneled and sworn; and where a case is tried to a court without a jury, jeopardy begins after accused has been indicted and arraigned, has pleaded and the court has begun to hear evidence.

In *Hill* we then applied this rule to the facts of that case and held that when the defendant had been arraigned on a valid indictment to which he had pleaded and the court had heard evidence going to the general issue whether the defendant was guilty of the offense charged, a finding by the court that the defendant was not guilty of the offense charged constituted jeopardy and deprived us of jurisdiction to hear the appeal by the Government.

*Hill* is controlling here. The dismissal of the Sanfords' indictment followed a mistrial at which all relevant evidence was heard. In his Opinion and Order of August 31, 1973, the district judge found as a matter of law that the Government, through its authorized agents,[1] had given its consent to the acts of the defendants and that their conduct was not criminal. The Sanfords have been once put in jeopardy and this appeal must therefore be dismissed.

The presence of a mistrial in this case does not distinguish it from *Hill*. Even though a mistrial alone does not constitute jeopardy, the action of the district judge was based upon evidence heard at the trial going to the general issue of guilt and his order dismissing the indictment amounted to a finding of not guilty as a matter of law. As we made clear in *Hill*, existence of jeopardy does not rest on whether the district judge's ruling was correct as a matter of law. On this we here express no opinion. We merely hold that under the circumstances of this case the defendants have been acquitted of all charges and that we have no jurisdiction to hear the Government's appeal.

Appeal dismissed.

---

1. The Opinion and Order provides the following summary of relevant testimony:

At the trial, a Government witness, Robert C. Freeman, who was the United States Game Management Agent in charge of the State of Montana, testified that he authorized the shooting of the animals in question. Furthermore, Freeman testified that a similar authorization was made by the appropriate official in the State of Montana Fish and Game Department. When asked if Mr. Parker and Paul Bagalio were authorized to do '. . . whatever was necessary to complete this investigation . . . ,' Freeman responded: 'They were given authority by our Bureau to do what was necessary to complete the investigation, yes.'