UNITED STATES of America,
Plaintiff-Appellant,

v.

Dennis Roy CHOATE,
Defendant-Appellee.

No. 75–1081.

United States Court of Appeals,
Ninth Circuit.

Sept. 15, 1975.

Rehearing Denied Nov. 21, 1975.

Joel Levine, Asst. U. S. Atty. (argued),
Los Angeles, Cal., for plaintiff-appellant.

Richard G. Sherman (argued), Los Angeles, Cal., for defendant-appellee.

## OPINION

Before WRIGHT and SNEED, Circuit Judges, and POWELL,* District Judge.

PER CURIAM:

The government appeals from the dismissal of the indictment charging income tax evasion. The appeal is under 18 U.S.C. § 3731 as amended January 2, 1971. Two issues are presented:

(1) Was the defendant placed in jeopardy so as to deny this court jurisdiction under 18 U.S.C. § 3731 which provides that "no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution"?

(2) If this court has jurisdiction to entertain the appeal, did the trial court err in dismissing the indictment?

## FACTS

The case was called on December 5, 1974. The defendant was questioned about his signature on the jury waiver and two stipulations of fact. Defendant agreed that he had full knowledge and voluntarily signed them. The court directed they be filed. Thereafter the United States Attorney said there were pretrial motions for disposition. The court then heard the motions. Defendant's motion to dismiss the indictment on the ground of improper conduct of the government agents was granted after the taking of unrefuted testimony.

In August of 1972 Customs Agent Williams hired Tony Gordon as an informant to get information about defendant's alleged narcotics smuggling activities. Gordon established a relationship with Choate. After a period of time Choate suggested that Gordon meet with Choate's attorney. The meeting allegedly was for the purpose of discussing an article Gordon was writing. Gordon informed the Customs Agent of the proposed meeting and received authorization for the visit. Gordon met with Mr. Sherman, Choate's attorney, and discussed the current government investigation. Gordon said he would keep Sherman advised of the progress of the investigation for a sum of money. This was in November, 1972.

After Gordon called on Sherman he met with Williams and two agents of the Internal Revenue Service [IRS]. Gordon told about the disclosure of his employment as an informer. He was relieved of his duties as an employee of Customs. He had no further connection with any case involving Choate.

The IRS agents were aware of Gordon's employment by Customs. They had met with him before he called on Sherman but did not know he later was to see Sherman. When the IRS agents talked to Gordon afterward and were told of his disclosure to Sherman, they had no further contact with Gordon. They received no income tax information whatever from Gordon. The first direct contact by an IRS agent with Choate was January 17, 1973. The indictment was returned August 21, 1974.

In granting the motion the trial judge said:

All right. The motion of the defendant to dismiss the Indictment based upon the conduct of the Customs Department in having one of their agents surreptitiously enter the offices of the attorney for the defendant for the purpose of obtaining evidence against the defendant is granted.

The Court finds that the investigation which had been and was being conducted between the Customs Department and the Internal Revenue Service was a joint operation. The Internal Revenue Service's investigation of the defendant was being conducted jointly in cooperation with the Customs Department. The Court finds that the deliberate invasion and the deliberate violation of the defendant's

---

* Honorable Charles L. Powell, Senior United States District Judge, Eastern District of Washington, sitting by designation.

Sixth Amendment rights are so ir-remedial [sic] that the Court is re-quired to grant the Motion to Dismiss the Indictment. [R.T. at 103–04].

## JURISDICTION

18 U.S.C. § 3731 provides in part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeop-ardy clause of the United States Con-stitution prohibits further prosecution.

. . . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

Prior to 1971 the appellate jurisdiction in appeals by the United States was lim-ited by the former § 3731. The 1970 Amendments evince a Congressional in-tent to widen the scope of appealability by the Government to adverse decisions and orders. See S.Rep.No.91–1296, 91st Cong., 2d Sess. (1970). This Court has jurisdiction "so long as further prosecu-tion would not be barred by the Double Jeopardy Clause." *Serfass v. United States*, 420 U.S. 377, 387, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (footnote omitted); *United States v. Richter*, 488 F.2d 170, 172 (9 Cir. 1973).

The question here, then, is whether the appellee Choate was placed in jeop-ardy during the proceedings before the district court. The answer is negative.

Appellee argues that acceptance of the waiver of jury trial and the two factual stipulations prior to hearing the motions constituted placing Choate in jeopardy. Appellee places great reliance on *United States v. Hill*, 473 F.2d 759 (9 Cir. 1972). In *Hill* the defendants were charged by indictment with violating an obscenity statute (18 U.S.C. § 1461). Over govern-ment objection, the district court took evidence on defendants' motion that the material was not obscene as charged. The district court agreed and dismissed the indictment. In holding that the United States had no right to appeal it was said at 761:

The court then 'heard' evidence going to the general issue—whether the mat-ter mailed was 'obscene,' a necessary element of the offense. . . .
What the court held, in substance, was that the defendants before it were not guilty.

*Hill* is distinguishable in that the court there passed on the general issue of guilt or innocence while here the district court's decision was on a claimed viola-tion of defendant's right to counsel.[1]

The question of jeopardy is "when a defendant has been acquitted of an of-fense, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him [the defendant] . . . ." *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975).

The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an indi-vidual for an alleged offense, thereby subjecting him to embarrassment, ex-pense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though inno-cent he may be found guilty. *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

■ Jeopardy attaches when the tri-al commences. This occurs "once the de-fendant is put to trial before the trier of facts . . . ." *United States v. Jorn*, 400 U.S. 470, 479–80, 91 S.Ct. 547, 554,

---

1. Selective Service cases are often inapposite. As was stated in *United States v. Walker*, 489 F.2d 1353, 1355 (7 Cir. 1973):

Under that statutory scheme, judicial review of the classification process is normally una-vailable until the registrant is required to defend a criminal charge. In such cases, determination of guilt or innocence typically turns on an analysis of the defendant's Se-lective Service file. (footnote omitted).

27 L.Ed.2d 543 (1971). The standard applied in a criminal case tried to the court is that jeopardy attaches when the court begins to hear evidence. *McCarthy v. Zerbst*, 85 F.2d 640, 642 (10 Cir. 1936).

■ Appellee argues that the filing of the two factual stipulations prior to the hearing on defendant's motion to dismiss constituted the taking of evidence within the meaning of this standard. The factual stipulations received by the district court were not considered in its ruling on defendant's pretrial motion. The subject matter of the stipulations was not related to defendant's motion. Rather, these stipulations were prepared in the pretrial stage which is not unusual in criminal tax fraud cases. It is clear the parties understood that the lodging of these stipulations had not put appellee in jeopardy.[2]

■ To adopt appellee's argument would require a mechanical formula to determine when jeopardy attaches. This approach well could undermine the policies and purposes of the constitutional safeguard. "Whether jeopardy attaches is based on flexible policy considerations rather than hard and fast rules . . ." *United States v. Brown*, 481 F.2d 1035, 1040 (8 Cir. 1973); *see Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn, supra*, 400 U.S. at 480, 91 S.Ct. 547.

■ Choate was not on trial when the district court dismissed the indictment. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass v. United States, supra*, 420 U.S. at 391–92, 95 S.Ct. at 1064. This court has jurisdiction to review the district court's dismissal of the indictment under 18 U.S.C. § 3731.

## ORDER OF DISMISSAL

■■ As set out above the trial court found that the activities of the government informer violated defendant's Sixth Amendment right. This invasion was found to be so irremediable that the indictment was dismissed.

The Sixth Amendment provides in part:

> "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."

The rationale of the trial court's ruling is not clear. The government informer's contact was with the defendant's attorney, not the defendant. The one meeting far from being surreptitious, resulted in Gordon telling Sherman of his role as a government informant. Appellee makes no claim that any confidential information was transmitted to Gordon. Sherman could hardly be expected to disclose prejudicial information after Gordon's revelation. While gross surreptitious governmental invasions into the legal camp of the defense *during or in preparation* of a trial may violate defendant's Sixth Amendment right to counsel, *e. g. O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966); *Hoffa v. United States*, 385 U.S. 293, 307, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Caldwell v. United States*, 95 U.S.App. D.C. 355, 205 F.2d 879, 881 (1953); *Coplon v. United States*, 89 U.S.App.D.C. 103, 191 F.2d 749, 757 (1951), the meeting here occurred in the early stages of

---

2. THE COURT: All right. The Court will accept that stipulation, also.

All right, Mr. Levine or Mr. Sherman, whoever is going to begin.

MR. LEVINE: [government counsel] Your Honor, there are several *pretrial motions* in this matter. I believe the first ones were filed by the defense and the Government has filed one Motion to Quash certain subpenas [sic] and I believe it would be proper to handle these matters prior to the trial beginning.

THE COURT: Yes. Let's hear from you, Mr. Sherman, on your motion first. [R.T. at 15] (emphasis added).

the IRS investigation of Choate and 21 months before the return of the indictment.

On the infiltration of defense conferences during a trial Judge Trask recently said:

> This is not to say that government intrusion into the private councils of a *pro se* defendant, struggling to oppose that government during a trial, for the purpose or with the result of gaining trial advantages, is something to be lightly regarded. It is inconceivable that responsible government . . . agencies would stoop to such clandestine and underhanded tactics in the trial of a lawsuit. Such intrusions offend one's sense of fair play and subvert the proper administration of justice. Even without the restraint imposed by the sixth amendment, they may well constitute a denial of due process. Such was not the case here. *United States v. Scott*, 521 F.2d 1188, at 1193 (9 Cir. 1975).

Such activity in the early stages of a government investigation is not subject to the same admonition. The facts are not in dispute. In the government's attempted use of Gordon in the instant case there is no showing of prejudice to the defendant. It is held that the trial court erred in its conclusion that defendant's Sixth Amendment rights had been violated.

Reversed and remanded.