**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Richard T. MARCHESE, Laura Lee Sorenson, Orville Leroy Sandberg, David R. Nemelka, Defendants–Appellees.**

No. 94–1149.

United States Court of Appeals,
Tenth Circuit.

Jan. 31, 1995.

Rehearing Denied March 8, 1995.

See also 842 F.Supp. 1307.

Kenneth R. Buck, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., and Gerald J. Rafferty, Asst. U.S. Atty., with him on brief), Denver, CO, for plaintiff-appellant.

Leonard E. Davies, Denver, CO, for defendant-appellee Richard T. Marchese.

Stephen L. Waters, Denver, CO, for defendant-appellee David R. Nemelka.

John Henry Schlie, Denver, CO, for defendant-appellee Orville Leroy Sandberg.

Before KELLY and HENRY, Circuit Judges, and BURCIAGA, District Judge.†

PAUL KELLY, Jr., Circuit Judge.

The government appeals from the district court's dismissal of a thirty-four count indictment charging Defendants–Appellees, Richard Marchese, Orville Sandberg, David Nemelka, and Laura Lee Sorenson, with mail fraud in violation of 18 U.S.C. § 1341 and money laundering in violation of 18 U.S.C. § 1956. We have jurisdiction pursuant to 18 U.S.C. § 3731 and reverse.

*Background*

The government charged Defendants with thirty-four counts of mail fraud and money laundering, alleging a scheme to defraud the customers of Power Securities Corporation ("Power"). The district court dismissed the indictment, finding that the government had only implicated the right of Power's customers to "honest and faithful brokers," and hence no property right was taken or placed at risk as required by *McNally v. United States*, 483 U.S. 350, 356, 107 S.Ct. 2875, 2879, 97 L.Ed.2d 292 (1987).

The indictment identified Defendants Marchese and Sandberg as owners and directors of Power, a broker-dealer specializing in the sale of penny stocks. Defendant Nemelka was a stock promoter and Defendant Sorenson was his assistant. The indictment alleged that beginning on or about May 1987, and continuing until January 1993, Defendants engaged in the unlawful scheme by

† The Honorable Juan G. Burciaga, Senior United States District Judge for the District of New Mexico, sitting by designation.

inducing Power's customers to purchase and sell penny stocks through the use of false or misleading statements or omissions. Allegedly, Defendants Marchese and Sandberg made false representations to Power's customers to induce them to buy and sell certain publicly traded securities. The Defendants failed to disclose that these stocks were secretly controlled by Defendant Nemelka and that Defendants Marchese and Sandberg were to receive kickbacks for retailing the Nemelka-controlled securities.

On October 18, 1993, Defendants Nemelka and Marchese filed a motion to dismiss the indictment. The district court initially denied these motions on December 7, 1993.

On February 18, 1994, with the acquiescence of the government and the trial court, all four Defendants waived their right to a jury trial. On March 11, 1994, Defendants Nemelka, Sorenson, Sandberg (and later Marchese) filed a motion for clarification concerning the court's December 7th order denying the motions to dismiss the indictment. The court then asked all parties to submit briefs on the issue of whether the indictment complied with the dictates of *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

On March 17, 1994, the district court held a second hearing and ruled that according to *McNally* and its progeny, the prosecution's theory was improper. The next day, Defendant Marchese filed a motion requesting an order dismissing the indictment, stating that the government could appeal any dismissal. On March 21, 1994, the district court held a third hearing. Concluding that all of the necessary elements for mail fraud could not be established because the government could not trace property of the customer back to the kickbacks, the court dismissed the entire indictment, including the money laundering charges which stemmed from the predicate charges of mail fraud.

## Discussion

### A. Double Jeopardy

Defendants contend that during arguments on the motion to dismiss the indictment, the district court considered evidence that "went outside the indictment," and as a consequence jeopardy attached. They then argue that the government's present appeal is improper because any retrial would constitute a violation of the Double Jeopardy Clause. We disagree.

The government's indictment was dismissed pursuant to a pretrial motion made by the Defendants. Defendants were "not then, nor [have they] ever been, 'put to trial before the trier of facts.'" *Serfass v. United States,* 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975). "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391–92, 95 S.Ct. at 1064. As in *Serfass,* "[a]t no time during or following the hearing on [Defendants'] motion to dismiss the indictment did the district court have jurisdiction to do more than grant or deny that motion, and neither before nor after the ruling did jeopardy attach." *Id.* at 389, 95 S.Ct. at 1063.

■ In a nonjury trial, jeopardy does not attach until the court begins to hear evidence from which a factual determination of guilt or innocence can be made. *See id.* at 388, 95 S.Ct. at 1062; *United States v. Olson,* 751 F.2d 1126, 1128 (9th Cir.1985) (per curiam). Defendants contend that the district court did hear evidence, for example, videotaped depositions that they argue were submitted to the court. *See* Aplee. Marchese Br. at 4. The government responds that the court heard evidence only in connection with the pretrial motion to dismiss and disputes that any depositions, videotapes, or transcripts were ever presented to court. *See* Aplt. Reply Br. at 3. In order to determine whether or not this appeal is proper under 18 U.S.C. § 3731, we need not resolve this factual disagreement.

■ For the court's dismissal to function as the equivalent of an acquittal, the judge would need to have considered evidence that would constitute a defense on the merits. *See United States v. Brewster,* 408 U.S. 501, 506, 92 S.Ct. 2531, 2534, 33 L.Ed.2d 507 (1971). In assessing the sufficiency of the government's indictment, the court heard ev-

idence regarding the government's ability to trace Mr. Nemelka's kickbacks from Power's customers. Since we find in this opinion that tracing is not a requisite to establishing a case of mail fraud, the evidence surrounding this issue would not constitute a defense on the merits. Hence, the court's dismissal did not act as the functional equivalent of an acquittal.

Furthermore, the trial had not commenced, literally or constructively. It is clear from the record that anything the court considered was only in connection with Defendants' pretrial motion to dismiss the indictment. Counsels' arguments on this motion did not constitute the presentation of evidence for the purpose of determining guilt or innocence, which is "the essence of the attachment of jeopardy." *Olson,* 751 F.2d at 1128. Hence, jeopardy did not attach, and this appeal is appropriately before us.

### B. Dismissal of the Indictment

The district court determined that the government was attempting to prosecute this case on the basis of a constructive trust theory, alleging that Defendants defrauded Power's customers of their right to honest and faithful brokers. Because this Circuit expressly rejected the constructive trust theory of prosecution in *United States v. Shelton,* 848 F.2d 1485, 1491–92 (10th Cir.1988), the district court dismissed the indictment as insufficient. The sufficiency of the indictment is a question of law we review de novo. *United States v. Brady,* 13 F.3d 334, 338 (10th Cir.1993); *United States v. Levine,* 970 F.2d 681, 685 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 289, 121 L.Ed.2d 214 (1992).

■ Title 18 U.S.C. § 1341 permits prosecution of whoever "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ..." utilizes the mail to facilitate such plan or scheme. This statute "clearly protects property rights, but does not refer to the intangible right of the citizenry to good government[,]" or for that matter, to the public's right to honest brokers, absent any transaction involving a property interest, tangible or intangible. *See McNally v. United States,* 483 U.S. 350, 356, 107 S.Ct. 2875, 2879, 97 L.Ed.2d 292 (1987); *Carpenter v. United States,* 484 U.S. 19, 25, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987).

■ The district court held that the Government must establish a nexus between the money paid by Power's customers and the kickbacks Nemelka paid to Power, in order to satisfy *McNally.* We disagree.

Neither *McNally* nor its progeny hold that such a nexus must exist in order to prove mail fraud under 18 U.S.C. § 1341. These cases merely determined that the mail fraud statute requires the loss of a property interest. Indeed, the *McNally* problem is not present in this case. The government's indictment alleges that Power's customers were deprived of such a property interest when they transferred funds to Power, based upon the brokers' materially false statements and omissions. The fact that the government cannot trace the kickbacks to the particular stock sales involved is legally insignificant, as the ultimate success or failure of the mail fraud scheme is immaterial. *See United States v. Dunning,* 929 F.2d 579, 581 (10th Cir.), *cert. denied,* 502 U.S. 879, 112 S.Ct. 224, 116 L.Ed.2d 182 (1991).

It should also be noted that pecuniary loss is not a requirement under *McNally.* *See Carpenter,* 484 U.S. at 27, 108 S.Ct. at 321; *Dunning,* 929 F.2d at 581. The essence of *McNally* is that one cannot violate 18 U.S.C. § 1341 by infringing upon another's expectation of honest conduct, as opposed to another's property interest. In *McNally,* the government indicted public officials of the Commonwealth of Kentucky for selecting an insurance agency for the state based on the company's willingness to make kickbacks. The government was unable, however, to identify a victim who transferred money or property to the public officials. The Court concluded that the alleged victims of the scheme, the citizens of Kentucky, were not defrauded of any cognizable property interest. Indeed, the Court stated in *McNally*

that as the action comes to us, there was no charge and the jury was not required to find that the Commonwealth itself was de-

1024

frauded of any money or property. It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance.

*McNally,* 483 U.S. at 360, 107 S.Ct. at 2881. Hence, the Court found the government's indictment to be insufficient under 18 U.S.C. § 1341.

Unlike the citizens of Kentucky, Power's customers may not have invested in the stocks controlled by Mr. Nemelka, absent the Defendants' enticements. This factual scenario is distinct from the "honest government cases," such as *McNally* and *United States v. Holzer,* where the victims may have been the general public and the prosecution did not show the loss of any discrete property interest as a result of the scheme. *See United States v. Holzer,* 840 F.2d 1343, 1348 (7th Cir.) (where a judge accepted bribes, citizens were deprived only of the intangible right to fair administration of justice because there was no evidence that the citizens lost any money or property), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). Here, the customers invested on the strength of Power's recommendations. The fact that the government concedes that it cannot trace the funds paid by Power's customers for the securities back through to the Defendant does not fatally flaw the indictment.

REVERSED.