54 F.3d 787
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ronald R. GOODING, Petitioner-Appellee,
v.
Gary STOTTS, Secretary of Corrections and Attorney General
of the State of Kansas, Respondents-Appellants.
 No. 94-3241.
 United States Court of Appeals, Tenth Circuit.
 May 11, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 A federal district judge in the District of Kansas concluded petitioner Ronald Gooding's conviction, in Kansas state court, for possession of cocaine violated the Fifth Amendment prohibition against double jeopardy[1] and granted Mr. Gooding federal habeas relief. See Gooding v. Stotts, 856 F. Supp. 1504, 1508-09 (D. Kan. 1994). Respondent Gary Stotts, the Secretary of the Kansas Department of Corrections, appeals this determination. We affirm.
 
 BACKGROUND[2]
 
 3
 Mr. Gooding was charged in Kansas state court with thirteen drug-related offenses. Prior to trial, defense counsel was advised by the prosecutor that the testimony of a critical prosecution witness, Mr. Gooding's ex-girlfriend, would exculpate Mr. Gooding. In reliance on this representation, Mr. Gooding's counsel referred to this favorable testimony in his opening statement. During the course of the trial, however, the prosecutor told defense counsel that Mr. Gooding's ex-girlfriend had changed her story and her testimony would now incriminate, rather than exculpate, Mr. Gooding. Defense counsel's immediate motion for a mistrial was granted.
 
 
 4
 Mr. Gooding, now represented by new counsel,[3] moved to dismiss the indictment and preclude further proceedings against him on double jeopardy grounds. The trial court denied the motion, but Mr. Gooding then filed an original action in the Kansas Supreme Court seeking a writ of habeas corpus. The Kansas Supreme Court stayed further proceedings against Mr. Gooding pending consideration of this claim, but later dissolved the stay and summarily denied his petition. The case was then set for retrial. Before the retrial commenced, however, Mr. Gooding filed a petition for a writ of habeas corpus in federal district court in Kansas pursuant to 28 U.S.C. Sec. 2254, reasserting his belief that subsequent proceedings against him were precluded by the prohibition against double jeopardy. The district court denied relief on the merits of this claim, and although Mr. Gooding filed an appeal in this court seeking to challenge this determination, he later agreed to dismiss voluntarily his appeal without prejudice.
 
 
 5
 After the conclusion of the federal proceedings, and prior to the start of the retrial, counsel for Mr. Gooding and the prosecutor agreed to, and signed, a written stipulation of facts. This stipulation was intended to constitute the evidence against Mr. Gooding, in lieu of live witnesses. See generally White v. State, 568 P.2d 112, 116 (Kan. 1977) (permitting and discussing the use of stipulated fact trials in criminal cases under Kansas law). By its own terms, the purpose of the stipulation was to allow the court "to determine the innocence or guilt of this defendant" with respect only to count one.[4] Gooding, 856 F. Supp. at 1507. On January 18, 1991, the state trial judge received the stipulation in open court, but refused to accept it, stating "I don't think it's legally sufficient to establish a prima facie case." Defense counsel then moved for a judgment of acquittal, claiming insufficient evidence, but the court denied the motion. Four days later, the parties presented the state trial judge with a second stipulation of facts. The court accepted this stipulation and found Mr. Gooding guilty of possession of cocaine as charged in count one.
 
 
 6
 Mr. Gooding appealed his conviction to the Kansas Court of Appeals, asserting the trial court erred in two respects: by refusing to grant his motion for judgment of acquittal after it found the first stipulation of facts insufficient to establish a prima facie case of guilt, and in denying his motion to dismiss the case on double jeopardy grounds following the mistrial.[5] In an unpublished opinion, the Kansas Court of Appeals rejected these claims and affirmed Mr. Gooding's conviction. The Kansas Supreme Court thereafter denied discretionary review.
 
 
 7
 Mr. Gooding then initiated the present action seeking a writ of habeas corpus. In this petition, he asserted two separate double jeopardy claims. The first claim, which he had raised in the earlier federal petition and on direct appeal, was whether it was permissible to retry him after the jury trial resulted in a mistrial. The second claim was that even if retrial after the mistrial was constitutionally permissible, the second stipulated fact trial constituted double jeopardy with respect to the first stipulated fact trial because the latter resulted in an acquittal.
 
 
 8
 The district court interpreted our mandate granting Mr. Gooding's request to dismiss voluntarily his first federal petition "as allowing [Mr. Gooding] to raise any issue, other than the double jeopardy issue dismissed on the merits, in a subsequent 2254 action." Gooding, 856 F. Supp. at 1505. On this basis, the district court did not rule on Mr. Gooding's first double jeopardy argument, but did reach the merits of his second double jeopardy claim. After an evidentiary hearing and briefing, the district court agreed with Mr. Gooding's second double jeopardy argument; and granted federal habeas relief after determining his conviction was obtained in violation of double jeopardy. See id. at 1506-08. At the time Mr. Gooding filed this federal petition, he had served his sentence and had been released on parole. See id. at 1505. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291.[6]
 
 DISCUSSION
 I.
 
 9
 Given the complex procedural history of this case, we begin by separating what is and what is not at issue in this appeal. Mr. Gooding's present petition contains two separate double jeopardy claims. The district court did not reach the merits of the first claim based on its interpretation of our mandate dismissing his first petition, and that ruling is not at issue in this appeal. Rather, the district court granted federal habeas relief on the basis of Mr. Gooding's second double jeopardy claim, which asserted that even if retrial after the jury trial resulted in a mistrial was permissible, the second stipulated fact trial constituted double jeopardy with respect to the first stipulated fact trial because the first stipulated fact trial resulted in a ruling by the trial court acquitting him of the charge contained therein.
 
 
 10
 This specific double jeopardy claim, however, was never advanced before the Kansas state courts during any of Mr. Gooding's direct appellate proceedings. As indicated, Mr. Gooding only argued his first double jeopardy claim in his direct appeal. Because the double jeopardy claim on which the district court granted relief is unexhausted, Mr. Gooding's present petition is a mixed petition containing both exhausted (the first double jeopardy claim) and unexhausted (the second double jeopardy claim) claims. Under the total exhaustion rule enunciated in Rose v. Lundy, 455 U.S. 509, 522 (1982), this petition was subject to dismissal. The State, however, never raised the nonexhaustion defense before the district court or this court. Thus, the question becomes what significance, if any, should be attributed to this fact.
 
 
 11
 "[T]he failure to exhaust state remedies does not deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application." Granberry v. Greer, 481 U.S. 129, 131 (1987). While there is a "strong presumption" in favor of exhaustion, the "failure to do so is not an absolute bar to appellate consideration of his claims." Id.; accord Harris v. Champion, 15 F.3d 1538, 1554-55 (10th Cir. 1994). "When the respondents fail to assert an exhaustion argument before the district court, 'we may consider it waived if the interests of comity, federalism, and justice would be served."' Hannon v. Maschner, 981 F.2d 1142, 1146 (10th Cir. 1992) (citations omitted); see also Harris, 15 F.3d at 1554-55.[7] In Hannon, we excused the petitioner's failure to exhaust even though the state had asserted, albeit in an untimely fashion, the defense of failure to exhaust. See Hannon, 981 F.2d at 1146. In this case, however, the State has never asserted the defense of nonexhaustion. Accordingly, we believe the interests of justice would be served by excusing Mr. Gooding's failure to exhaust his second double jeopardy claim, the claim on which the district court granted relief. Therefore, the petition is no longer subject to dismissal under Rose. See Harris v. Champion, F.3d , , 1995 WL 73732 * 2 & n.3 (No. 93-5191) (10th Cir. Feb. 21, 1995) (where the State fails to raise the defense of nonexhaustion with respect to a mixed petition, "the court can hear the merits of the unexhausted claims rather than dismiss the petition"). Accordingly, there are no procedural impediments to our determination of the propriety of the district court's ruling on Mr. Gooding's second double jeopardy claim.
 
 
 12
 A district court's conclusions under the Double Jeopardy Clause, including whether jeopardy has attached to a particular proceeding, involve questions of law subject to de novo review. See United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir. 1991); see also Crist v. Bretz, 437 U.S. 28, 37-38 (1978). It is the defendant's burden to establish a double jeopardy violation. See Raymer, 941 F.2d at 1037.
 
 II.
 
 13
 The Double Jeopardy Clause "consist[s] of three separate constitutional protections," one of which is the "protect[ion] against a second prosecution for the same offense after acquittal." North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted). While the Double Jeopardy Clause generally does not divest the State of its prosecutorial power to "'retry a defendant who has succeeded in getting his first conviction set aside,"' Tibbs v. Florida, 457 U.S. 31, 40 (1982) (emphasis omitted) (quoting Pearce, 395 U.S. at 720), there is an exception when appellate reversal is because of insufficient evidence. See Tibbs, 457 U.S. at 40-41 (citing cases). Similarly, the Double Jeopardy Clause prohibits retrial of a defendant after a trial court grants a motion for judgment of acquittal at the close of the prosecution's case-in-chief[8] because of insufficient evidence. See Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986); accord United States v. Wood, 958 F.2d 963, 967 (10th Cir. 1992). Under Tibbs and Smalis, a determination that there was insufficient evidence operates as an "absolute[] shield[]" against retrial under the Double Jeopardy Clause. See Tibbs, 457 U.S. at 41. In determining the propriety of the district court's ruling in this case, we must address two specific issues: (1) was the state trial judge's comment on inadequacy of the first stipulation of facts an "acquittal," and if so, (2) had jeopardy attached at the time of the acquittal.
 
 A.
 
 14
 In determining whether a trial judge's comment constituted an acquittal, we must assess whether the substance of the court's ruling, "'whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged."' United States v. Scott, 437 U.S. 82, 97 (1978) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977)). In this case, it is difficult to see how the trial judge's ruling could not be viewed as an acquittal. The judge specifically opined that the first stipulation of facts did not contain sufficient evidence to establish a prima facie case. Under the Supreme Court's interpretation of the Double Jeopardy Clause in Tibbs and Smalis, this determination absolutely shields Mr. Gooding from being forced to stand trial again for this offense.
 
 
 15
 In an effort to avoid the attendant consequences of this determination, the State argues this comment is essentially irrelevant because at the time it was made, jeopardy had not formally attached to the proceeding. The State rests its argument on the fact that although the first stipulation of facts was submitted to the trial judge, the court never formally accepted the stipulation as evidence and, the argument goes, jeopardy had not yet attached to the first stipulated fact trial. To assess this argument, we must discuss the applicable legal principles governing whether and when jeopardy attaches.
 
 
 16
 In a jury trial, jeopardy attaches once the jury has been empaneled and sworn, even though no evidence relating to the defendant's guilt or innocence has been introduced. See Illinois v. Somerville, 410 U.S. 458, 466 (1973) (citing Downum v. United States, 372 U.S. 734, 735-37 (1963)); see also Hunter v. Wade, 169 F.2d 973, 975 (10th Cir. 1948), aff'd 336 U.S. 684 (1949). In a nonjury trial, such as the case at bar, "jeopardy does not attach until the court begins to hear evidence from which a factual determination of guilt or innocence can be made." United States v. Marchese, 46 F.3d 1020, 1022 (10th Cir. 1995); accord Serfass v. United States, 420 U.S. 377, 388 (1975) (citing with approval, inter alia, McCarthy v. Zerbst, 85 F.2d 640, 642 (10th Cir.), cert. denied, 299 U.S. 610 (1936)). In either case, however, the overriding principle is that jeopardy does not attach until a defendant faces the "risk of a determination of guilt." Serfass, 420 U.S. at 391; see also Marchese, 46 F.3d at 1022 ("'Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy."' (Citation omitted.)).
 
 
 17
 In a typical nonjury trial, the judge begins to hear evidence "when the first witness is sworn." See Raymer, 941 F.2d at 1038 (citations omitted). Mr. Gooding's trial, however, was not a "typical" nonjury trial because no witnesses were ever sworn; all of the evidence was presented by way of a stipulation of facts. Under these circumstances, the district court held "where the parties agree to stipulated facts, the submission of the facts to the court constitutes the hearing of evidence." Gooding, 856 F. Supp. at 1507 (emphasis added) (citing United States v. Hill, 473 F.2d 759, 761 (9th Cir. 1972) and State v. Pittsburg Paving Brick Co., 230 P. 1035, 1037 (Kan. 1924)).
 
 
 18
 The State concedes that if the district court's statement represents a correct interpretation of the law, then jeopardy had attached to the first stipulated fact trial and the second stipulated fact trial was precluded by the Double Jeopardy Clause. But the State vigorously asserts that the mere presentation of the stipulation to the trial court, without the court's acceptance of it into evidence, cannot and does not constitute a "hearing of evidence" under Kansas law. In the State's view, the critical issue in determining when the trial judge began to hear evidence in a stipulated fact trial is when did the court accept the stipulation, not when was the stipulation presented to the court.[9]
 
 
 19
 To address this argument, we begin by noting several important and undisputed facts. First, Mr. Gooding, represented by counsel, was brought before a state court of competent jurisdiction on January 18, 1991, for the express purpose of having his guilt or innocence on the charge of possession of cocaine determined after a nonjury trial to the court by stipulated facts. Second, the stipulation of facts had previously been entered into and signed by Mr. Gooding, his attorney, and the prosecuting attorney. Third, this stipulation was marked as an exhibit and presented to the court to allow the court to decide whether Mr. Gooding's guilt had been established beyond a stipulation contained sufficient evidence to establish a prima facie case of guilt against Mr. Gooding. Given these undisputed facts, the State nonetheless asserts the failure of the court to admit the stipulation formally into evidence requires us to hold that jeopardy had not attached. We do not agree.
 
 
 20
 In rejecting the State's argument, the district court stated:
 
 
 21
 The State argues that in the instant case, the trial court had not begun to hear evidence, therefore jeopardy had not attached. The State misstates the general rule and the specific law in Kansas. Both Hill and Pittsburg Paving, supra, correctly state the law; in a case where the parties agree to stipulated facts, the submission of the facts to the court constitutes the hearing of evidence.
 
 
 22
 Gooding, 856 F. Supp. at 1507 (emphasis added). We agree with the State that the district court erred in affording dispositive weight to Hill and Pittsburg Paving. The language relied on in those cases which the district court relied upon was dicta because the stipulations in those cases, unlike the present case, had been formally accepted into evidence. See Hill, 473 F.2d at 761 ("In this case the evidence was received."); Pittsburg Paving, 230 P. at 1036 ("The prosecution against appellants began, proceeded ... to presentation of the agreed facts, [and] the acceptance of these by the court as the controlling facts."). Therefore, those decisions cannot be viewed as dispositive. Nonetheless, "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994). Our analysis of this narrow issue leads us to conclude the district court's conclusion, if not its entire rationale, was indeed correct.
 
 B.
 
 23
 The concept of "attachment of jeopardy" "define[s] a point in criminal proceedings at which the constitutional purposes and policies [of the Double Jeopardy Clause] are implicated." Serfass, 420 U.S. at 388 (citing United States v. Jorn, 400 U.S. 470, 480 (1971) (plurality opinion of Harlan, J.)). Those policies have been summarized in the following oft-quoted paragraph.
 
 
 24
 "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty."
 
 
 25
 Serfass, 420 U.S. at 387-88 (citation omitted). Consistent with these principles, the Supreme Court has expressly "disparaged 'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause." Serfass, 420 U.S. at 390 (quoting Somerville, 410 U.S. at 467); see also United States v. Choate, 527 F.2d 748, 751 (9th Cir. 1975) ("Whether jeopardy attache[d] is based on flexible policy considerations rather than hard and fast rules." (Citations omitted)), cert. denied, 425 U.S. 971 (1976).
 
 
 26
 With this understanding in mind, we believe the State's argument that jeopardy does not attach until the trial court formally accepts a written stipulation into evidence is misplaced. In fact, it is difficult to imagine a more rigid, mechanical rule than the one advanced by the State. While we recognize that there is little case law from any jurisdiction addressing this precise issue, we have found one case supporting our conclusion that jeopardy attached when the stipulation was submitted to the trial judge. See United States v. Finch, 548 F.2d 822 (9th Cir. 1976).[10]
 
 
 27
 In Finch, the defendant filed a motion to dismiss the indictment, which was denied. The government and the defendant then entered into an "Agreed Statement of Facts," which constituted "a submission of the case to the district court for plenary determination and decision." Id. at 824-25. The stipulation also constituted a waiver of the right to trial by jury. Id. The trial court then reconsidered its earlier ruling, concluded the information was inadequate, and dismissed it. Id. The issue on appeal concerned whether the government could appeal under 18 U.S.C. Sec. 3731 without offending the Double Jeopardy Clause.[11] Id. Although the Ninth Circuit concluded the government could in fact appeal under Sec. 3731, the opinion, written by then-circuit judge Anthony Kennedy, held "jeopardy attached at the time the case was submitted to the district court for decision." Id. at 825 (footnote omitted).
 
 
 28
 The court reached this conclusion by relying on three principles. First, the stipulation of facts "undoubtedly" gave the district court "the power to determine the guilt or innocence of the defendant." Id. Second, the district court's ruling was related to the factual stipulation itself. Id. Third, the parties in that case "expect[ed] that the stipulations of fact would place the defendant in jeopardy." Id. Under these circumstances, the court was able to distinguish the Supreme Court's decision in Serfass as well as the Ninth Circuit's decision in Choate, and hold that jeopardy had in fact attached at the time the case, and therefore the stipulation, was submitted to the district court.
 
 
 29
 Serfass involved the government's attempt to appeal a pretrial order dismissing an indictment where the defendant had not waived his right to trial by jury. Because the court was ruling on a pretrial motion, at no time was the defendant subjected "to the risk of a determination of guilt." Finch, 548 F.2d at 825. Similarly, in Choate, the Ninth Circuit concluded jeopardy had not attached when the district court granted the defendant's pretrial motion to dismiss, even though the defendant had waived his right to trial by jury and the court had received two stipulations of fact. Finch characterized the Choate court's reasoning as follows: "the factual stipulations received by the district court were not considered in its ruling on the defendant's pretrial motion and ... the parties clearly understood that the lodging of the stipulations had not put appellee in jeopardy." Finch, 548 F.2d at 825 (discussing Choate, 527 F.2d at 751). The Finch court went on to note that because Choate involved a pretrial motion, the district court "had no power to find the defendant guilty until it first ruled on the pretrial motion, and thus the defendant was not subject to the risk of a determination of guilt." Id. Thus, the Finch court concluded that jeopardy had attached at the time "the case was submitted" to the district court. Id.
 
 
 30
 We find Finch persuasive, and applying its teachings, we conclude Mr. Gooding was in fact subjected to double jeopardy. First, and perhaps most importantly, the state trial judge commented on the insufficiency of the evidence during a trial proceeding, and not during a pretrial hearing. Thus, at the time this comment was made, the court unquestionably had the power to determine whether Mr. Gooding was guilty, a power it in fact exercised to find Mr. Gooding guilty.[12] Second, it cannot be disputed that the court's ruling was related to the contents of the stipulation itself. Third, it also cannot be disputed that the parties were under the expectation that the trial court would render a determination as to Mr. Gooding's guilt. The parties convened at the first stipulated fact trial for the express purpose of allowing the court to make such a determination.
 
 
 31
 Based on the criteria enunciated in Finch, we conclude the first stipulated fact trial resulted in an acquittal after jeopardy had attached upon the submission of the stipulated facts to the trial court for it to determine Mr. Gooding's guilt or innocence. In essence, the first stipulated fact trial put the defendant "to trial before the trier of facts." Serfass, 420 U.S. at 388. Regardless of whether the state court judge formally accepted the stipulation into evidence, the defendant was before a finder of fact for the purpose of adjudicating his guilt or innocence as to the crimes charged. The State, having been a willing party to the stipulation of facts, made a calculated decision that rather than endure the costs and burdens of a full-fledged trial, it was amenable to a stipulated fact trial. But in addition to receiving the benefits associated with a trial by stipulated facts, the State necessarily assumed the corresponding risks, including the most fundamental risk "that an essential element will be omitted and the stipulation will fail due to insufficiency of the evidence," which "is precisely what happened in the case at bar." Gooding, 856 F. Supp. at 1508.
 
 CONCLUSION
 
 32
 The State of Kansas' retrial of Mr. Gooding on the second set of stipulated facts, after jeopardy had attached to the trial on the first set of stipulated facts and after the trial court acquitted Mr. Gooding, resulted in Mr. Gooding "twice be[ing] put in jeopardy," in violation of the Fifth Amendment to the Constitution. Therefore, we AFFIRM the district court's order granting federal habeas relief.
 
 
 33
 STEPHEN H. ANDERSON, Circuit Judge, concurring separately:
 
 
 34
 This case does not stand for the proposition that the Federal Constitution prohibits state trial judges from allowing the prosecution to reopen its case or to offer additional evidence after initially resting. It is entirely conceivable that during a trial, whether by stipulation or presentation of live evidence, the prosecution may rest, with the trial judge simultaneously denying a motion for acquittal based on insufficient evidence, observing to the prosecution that the evidence is indeed weak or insufficient, and allowing the prosecution to present further evidence. This is a matter of state law and procedure which we cannot federalize absent extraordinary circumstances.
 
 
 35
 But the State did not make such an argument in this case, and we have not been advised on the state procedures at work, or the trial judge's intention with respect to such procedures during the course of events outlined in the record. The State has chosen to take its stand on the issue of whether or not the initial stipulation presented to the court constituted the submission of evidence. The State argues that the stipulation was not evidence. I fully agree with the majority's conclusion that it was. That is the sole premise from which the analysis of this case proceeds and, based on that premise, I agree with the reasoning and conclusion of the majority.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The Double Jeopardy Clause of the Fifth Amendment provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In Benton v. Maryland, 395 U.S. 784 (1969), the Supreme Court held the Double Jeopardy Clause of the Fifth Amendment was incorporated against the States by way of the Due Process Clause of the Fourteenth Amendment. Id. at 784-85
 
 
 [2]
 The facts and procedural history of this case are undisputed and are taken from the district court's opinion in this case. See Gooding, 856 F. Supp. at 1505-06
 
 
 [3]
 Mr. Gooding's counsel during the trial withdrew because of the possibility he might have to testify at a hearing regarding the representations made to him by the prosecutor, given that those representations prompted counsel's motion for a mistrial
 
 
 [4]
 A stipulated fact trial is not the equivalent of a plea of guilty. As the Kansas Supreme Court recognized in White, a defendant who elects to have his guilt or innocence determined by a stipulated fact trial has not pled guilty, but has maintained their initial plea of not guilty and forced the government to meet its burden of proving guilt beyond a reasonable doubt. E.g., In re Winship, 397 U.S. 358, 361 (1970). Although it would not be correct to state that the stipulated fact trial was a plea agreement, since the defendant did not plead guilty, it appears that in exchange for Mr. Gooding's agreement to this method of trial on count one, the prosecution agreed to forego prosecution on the remaining counts
 
 
 [5]
 This double jeopardy claim was the same claim raised and adjudicated adversely to Mr. Gooding in his earlier federal petition for a writ of habeas corpus
 
 
 [6]
 Although Mr. Gooding has been released from prison, his status as a parolee is sufficient to render him "in custody" for purposes of 28 U.S.C. Sec. 2254. See Jones v. Cunningham, 371 U.S. 236, 243 (1963); United States v. Condit, 621 F.2d 1096, 1098 (10th Cir. 1980). Accordingly, this appeal presents a viable case or controversy under Article III that is not moot by virtue by Mr. Gooding's status as a parolee
 
 
 [7]
 To be sure, neither Hannon nor Harris mentioned our earlier decision in Naranjo v. Ricketts, 696 F.2d 83 (10th Cir. 1982) (per curiam), where we held the State's failure to assert a nonexhaustion defense would not result in the waiver of that defense. See Naranjo, 696 F.2d at 86-87. Naranjo, however, predates the Supreme Court's decision in Granberry. While we are not at liberty to ignore the decisions of a prior panel of this court, see In re Smith, 10 F.3d 723, 724 (10th Cir. 1993), cert. denied, 115 S. Ct. 53 (1994), this principle is subject to an exception when, inter alia, there is an intervening Supreme Court decision on point. Id. In this case, the Supreme Court cited Naranjo in Granberry to support the Court's grant of certiorari because of a circuit split on this precise question. See Granberry, 481 U.S. at 130 n.2. Thus, we believe these cases are on point, and given their divergent holdings, we must treat Granberry as effectively overruling this aspect of Naranjo, which is what we did, albeit implicitly, in Hannon and Harris
 
 
 [8]
 But see United States v. Wilson, 420 U.S. 332, 344-45 (1975) (holding that Double Jeopardy does not preclude retrial a posttrial order granting a motion for judgment of acquittal because relief could take the form of reinstating the jury's verdict)
 
 
 [9]
 The State also asserts the district court erred by not respecting the determination by the Kansas Court of Appeals that it was appropriate, as a matter of state law, for the state trial court to have rejected the first stipulation
 Reexamination of questions of state law is beyond the province and the statutory authority of a federal habeas court, 28 U.S.C. Sec. 2254(a); see also Brecht v. Abrahamson, 113 S. Ct. 1710, 1719 (1993) ("Federal courts are not forums in which to relitigate state trials"); Bowser v. Boggs, 20 F.3d 1060, 1065, 1066 (10th Cir.), cert. denied, 115 S. Ct. 313 (1994), because "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. ___, 112 S. Ct. 475, 480 (1991). Thus, the State is undoubtedly correct that whether the state court properly accepted or rejected the first stipulation, as a matter of Kansas law, involves a question of state law beyond the scope of federal habeas review.
 But the issue presently before this court does not require us to -- nor could we -- review the propriety of that decision. To the contrary, we must assume the state trial judge was acting within its proper authority in rejecting the stipulation as a matter of Kansas law. Taking this as the procedural posture of this appeal, our task is not to decide whether that decision was correct, but rather, to decide the analytically separate and distinct question of what consequences, if any, attach to that decision under the Double Jeopardy Clause of the federal Constitution. The answer to that question is within the realm of federal habeas review because it turns on an interpretation of federal law. As the district court stated, this particular double jeopardy claim does not
 concern [] a question of state law which would preclude habeas corpus review by a federal court.
 This case places squarely before the court the federal question of whether petitioner's constitutional right to be protected from prosecution a second time for the same crime was violated by the State of Kansas.
 Gooding, 856 F. Supp. at 1505. We therefore disagree with the State's suggestion that we lack federal habeas jurisdiction to review this appeal.
 
 
 [10]
 The State has not cited us to any cases adopting their position, namely, that jeopardy does not attach until the stipulation is formally received into evidence
 
 
 [11]
 18 U.S.C. Sec. 3731 provides, in pertinent part, "[i]n a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information ... except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." In Wilson, the Supreme Court reiterated that in enacting the present version of Sec. 3731, "Congress intended ... to allow appeals whenever the Constitution would permit." Wilson, 420 U.S. at 337
 
 
 [12]
 Therefore, cases involving pretrial dismissals are distinguishable