**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellant*,

　　　　　v.

COLE LUSBY,
　　　　　　*Defendant-Appellee.*

No. 18-10368

D.C. No.
2:18-cr-00136-
APG-PAL-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted January 9, 2020
San Francisco, California

Filed August 25, 2020

Before: J. Clifford Wallace and Michelle T. Friedland,
Circuit Judges, and Robert S. Lasnik,[*] District Judge.

Opinion by Judge Wallace

---

[*] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's order dismissing an indictment charging the defendant with failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a), and remanded.

The district court held that the Government was required to prove that a defendant's interstate travel was not legally compelled, and the Government conceded it could not prove its case under that interpretation of Section 2250.

Rejecting the defendant's contention that the Double Jeopardy Clause precludes jurisdiction over this appeal, the panel held that jeopardy did not attach in this case because the district court never heard evidence for the purpose of deciding the issue of guilt or innocence that could subject the defendant to the risk that he would be found guilty.

Addressing the merits, the panel held that, in light of the plain language and purpose behind the statute, Section 2250(a) does not require that a defendant's interstate travel not be compelled. The panel therefore remanded with instructions to apply the elements of Section 2250 as written.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Elham Roohani (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellant.

Kathleen Bliss (argued), Kathleen Bliss Law PLLC, Henderson, Nevada, for Defendant-Appellee.

**OPINION**

WALLACE, Circuit Judge:

The Government appeals from an order dismissing Cole Lusby's indictment, which charged him with failing to register as a sex offender in violation of 18 U.S.C. § 2250(a). The key issues in this appeal are whether the Double Jeopardy Clause of the Fifth Amendment precludes our jurisdiction over this appeal and, if we have jurisdiction, whether the district court erred in holding that the Government was required to prove that Lusby's interstate travel was not legally compelled. We conclude that we have jurisdiction and that the district judge erred as a matter of law in holding that Section 2250 requires that a defendant's interstate travel not be legally compelled. Accordingly, we reverse and remand.

## I.

The events of this case[1] started in 2009, when Cole Lusby was convicted of crimes that required him to register as a convicted sex offender.[2] Seven years later, Lusby pled guilty to failing to register as a sex offender under the federal Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20901, *et seq.* Upon his conviction, the district court sentenced Lusby to 24 months of incarceration followed by eight years of supervision. Because there was no federal prison in Nevada, the federal Bureau of Prisons (BOP) transported Lusby to a facility in Arizona to serve his sentence.

The terms of Lusby's supervised release originally required Lusby to "report, in person, to the probation office in the district to which [he was] released within 72 hours of discharge from custody." Because he would be homeless upon release, Lusby requested that, upon his release, he serve some of his supervised release at a residential re-entry center in Las Vegas, Nevada (the Halfway House). Accommodating Lusby's request, the Probation Office recommended that the district court modify Lusby's conditions of supervised release to include a 90-day placement at the Halfway House. Based on this recommendation, the district court modified the conditions of Lusby's supervision such that he "must reside in a

---

[1] We recite the facts as they have been presented to us in the current posture of this case, but our doing so here does not change the Government's burden on remand to prove all relevant facts at trial.

[2] Lusby was convicted of first-degree attempted rape, first-degree custodial interference, first-degree online sexual corruption of a child, second-degree custodial interference, misdemeanor sexual abuse, and misdemeanor escape.

residential reentry center for a term of 90 days." The Probation Office subsequently approved a prerelease plan under which Lusby "[would] be accepted for supervision in the District of Nevada."

On January 26, 2018, Lusby was physically released from BOP custody in Arizona, transported to a bus station in Arizona, provided a bus ticket to Las Vegas, Nevada, and instructed to "take a taxi, or make [his] own arrangements, to get to" the Halfway House. The instructions also reminded him to "report for supervision within 72 hours after [his] release."

As of February 1, 2018, however, Lusby had neither arrived at the Halfway House nor reported to the Nevada Probation Office. Accordingly, the district court issued a warrant for Lusby's arrest for violating the terms of his supervised release. On April 24, 2018, Lusby was apprehended in Las Vegas, where he had apparently been living using other identities. For violating the terms of his supervision, Lusby was sentenced to 24 months of incarceration followed by a life-term of supervision.

Lusby was also indicted for failing to register as a sex offender after entering Nevada in violation of 18 U.S.C. § 2250(a). Lusby waived his right to a trial by jury, so the court set a date for a non-jury trial. Lusby filed a pro se motion to dismiss the indictment, arguing that he had previously registered as a sex offender in Nevada, and thus any failure to update his address was a "purely intrastate" issue.[3] During a series of hearings held to address both the

---

[3] Lusby and the Government dispute whether he previously registered with the Nevada sex offender registry, and the district court did not make a factual finding on this issue.

motion to dismiss and trial scheduling, the district court questioned the voluntariness of Lusby's interstate travel and expressed concerns about the Government "manufacturing" jurisdiction by compelling Lusby's travel across state lines.

After ordering supplemental briefing, the district court initially denied Lusby's motion to dismiss. The court explained that it had concluded that the interstate travel component of SORNA includes a "voluntariness element." But the court concluded there was "a question of fact" as to whether Lusby's travel was voluntary, and that "one of the purposes of the trial [would be] to flesh that factual issue out." In response to the court's ruling, the Government filed an emergency motion for clarification, asking the court to explain, among other things, how it would define "voluntariness," because the Government believed that the answer to this "question of law" would affect the Government's trial burden.

In response to the Government's motion, the district court explained that in its view, "to satisfy SORNA's interstate travel requirement, the defendant's travel must not be legally or physically compelled." The district court observed that it did "not know all the facts underlying Lusby's travel to Arizona and back to Nevada," but that "[i]f Lusby was involuntarily removed from Nevada and then legally compelled to return to Nevada, he did not voluntarily travel in interstate commerce and should not be federally prosecuted."[4]

---

[4] The district court also stated that it "surmise[d]" from the parties' statements and briefs some specific facts about Lusby's interstate travel, and suggested that under those facts, both Lusby's travel to Arizona and his return to Nevada would have been involuntary, and thus Lusby's

The Government conceded it could not prove its case under the district court's interpretation of Section 2250 and filed a motion asking the district court to grant Lusby's motion to dismiss the indictment in order to seek appellate review of the district court's interpretation of Section 2250. Based on this concession, the district court agreed to dismiss the indictment.

## II.

We begin by addressing Lusby's challenge to our jurisdiction over this appeal. Lusby argues that we lack jurisdiction because the Double Jeopardy Clause of the United States Constitution prohibits "re-trying" him. Although Lusby is correct that our jurisdiction does not extend to appeals from dismissals of indictments where that Clause "prohibits further prosecution," 18 U.S.C. § 3731, it does not do so here.

The Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018). However, "the Clause was not written or originally understood to pose 'an insuperable obstacle to the administration of justice' in cases where 'there is no

---

conduct would have fallen outside the scope of the statute as the district court understood it. But the district court did not adopt those facts as true or take the action that its legal reasoning would have demanded had it intended to do so: dismissal for failure as a matter of law to prove an element of the charged crime.

semblance of [these] type[s] of oppressive practices.'" *Id.*, *quoting Wade v. Hunter*, 336 U.S. 684, 688–89 (1949) (alterations in original).

In striking this balance, the Supreme Court has consistently held that the Double Jeopardy Clause has "no application" unless jeopardy has first "attach[ed]." *See, e.g*, *Serfass v. United States*, 420 U.S. 377, 388 (1975). As the Supreme Court explained:

> Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

*Id.* at 391–92, *quoting Kepner v. United States*, 195 U.S. 100, 133 (1904). In other words, jeopardy "does not attach" unless a defendant is "put to trial before the trier of facts," *id.* at 388–89, which subjects the defendant to the "risk of a determination of guilt," *id.* at 391.

Lusby argues that jeopardy attached here because, in dismissing his indictment, the district court effectively conducted a non-jury trial. However, we previously rejected this argument under similar circumstances in *United States v. Olson*, 751 F.2d 1126 (9th Cir. 1985).

In *Olson*, a former air traffic controller was indicted for making false statements on government forms for the purpose of securing temporary disability benefits. *Id.* at 1127. The district court dismissed the indictment based on

its legal view that an element of the crime was missing: a person seeking temporary disability benefits had no duty to provide the information requested. *Id.* We held that the dismissal of the indictment on that ground was erroneous, and, as is important here, that jeopardy had not attached because "[j]eopardy does not attach without the consideration of some or all of the factual elements in the case, and the risk of a finding of guilt based on the resolution of a fact issue." *Id.* at 1129 (internal citations omitted). We then concluded that jeopardy did not attach because the trial court made a "purely legal determination" without "receiving and evaluating evidence and applying it to the question of guilt or innocence." *Id.* In reaching that conclusion, we observed that, even though the hearing took place on the day scheduled for trial, the government only "described what evidence it would present" at trial, "and counsel's statements did not constitute hearing evidence for the purpose of deciding the issue of guilt or innocence, which is the essence of the attachment of jeopardy." *Id.* at 1128. Finally, we explained that risk of being found guilty is what affects the "interests protected by the double jeopardy clause." *Id.*

In this appeal, we reiterate that—in the context of a non-jury trial—jeopardy only attaches when the court begins to "hear[] evidence for the purpose of deciding the issue of guilt or innocence" that could "subject[]" the defendant "to the risk that he would be found guilty." *Id.* at 1128. For the following reasons, however, we hold that those circumstances are not present here and thus jeopardy never attached.

First, the circumstances surrounding the district court's rulings and the rulings themselves make clear that the district court did not "hear[] evidence for the purpose of deciding

the issue of guilt or innocence." *Id.* Rather, the proceedings in question were held in response to Lusby's motion seeking dismissal before trial based on what he characterized as "pure questions of law," followed by the Government's emergency motion for the district court to clarify the district court's *legal* interpretation of Section 2250, culminating in the Government's concession that it could not prove its case under that legal interpretation and the district court's agreement to dismiss the indictment in light of the concession. Like in *Olson*, the district court here made a "purely legal determination," *id.* at 1129: namely, that an element of the SORNA offense charged here is that "the defendant's [interstate] travel must not be legally or physically compelled." As the district court explained, its goal in these proceedings was to provide "guidance" about what the parties would need to prove at trial, similar to how it would have proceeded upon a request for a pre-trial ruling on a jury instruction.

Moreover, the district court made this determination without "receiving and evaluating evidence and applying it to the question of guilt or innocence." *Id.* In its own words, the district court did "not know all the facts underlying Lusby's travel to Arizona and back to Nevada." Rather than either making findings of fact or treating any particular facts as undisputed by the parties, the district court initially ruled that the trial would proceed, with factual disputes about the voluntariness of Lusby's interstate travel being "flesh[ed] . . . out" at trial. It was only after the Government conceded that it would be unable to prove its case under the court's legal interpretation that the district court dismissed the indictment. Neither the proceedings during which the district court evaluated the meaning of the statute nor the subsequent dismissal based on a Government concession involved "an application of law to facts established by evidence which the

court received and considered." *Id.* Instead, the district court provided legal analysis based on the "parties' statements," which, as we clarified in *Olson*, does "not constitute hearing evidence for the purpose of deciding the issue of guilt or innocence, which is the essence of the attachment of jeopardy." *Id.* at 1128.

Second, Lusby was never "subject[ed] . . . to the risk that he would be found guilty." *Id.* As to the interstate travel issue, the district court assessed whether a "voluntariness element" existed, what the definition of that element should be, and whether to accept a Government concession made in light of that definition. If the district court had been persuaded by the Government's position on the disputed legal issue, the result would have been analogous to adopting a different set of jury instructions than the ones Lusby sought (or, more precisely, the ones Lusby would have sought if he had been proceeding to a jury trial)—not a finding of factual guilt as to any element. Moreover, as Lusby concedes, there was "an unresolved factual dispute as to whether Mr. Lusby [previously] registered as a sex offender in Nevada" and "the district court never made a factual finding" on this issue. This unresolved factual dispute concerned an entirely different and independent element of the offense, which, in the district court's view, was at "the crux of [the] case." Because the district court was not considering an uncontested set of facts or even attempting to resolve outstanding factual disputes, including one at "the crux" of the case, Lusby was never at "risk of a finding of guilt based on the resolution of a fact issue." *Id.* at 1129. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass*, 420 U.S. at 391–92.

Thus, we hold that jeopardy did not attach in this case because the district court never heard "evidence for the purpose of deciding the issue of guilt or innocence" that could "subject[]" Lusby "to the risk that he would be found guilty." *Olson*, 751 F.2d at 1128. As explained below, we hold that this conclusion does not run afoul of the interests protected by the Double Jeopardy Clause.

The "underlying idea" of the Double Jeopardy Clause is that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *U.S. v. Scott*, 437 U.S. 82, 87 (1978) (internal quotation marks and citation omitted). Indeed, "the 'core' of the Double Jeopardy Clause's prohibition on multiple prosecutions is denying the prosecution a second opportunity 'to supply evidence which it failed to muster in the first proceeding.'" *United States v. Weems*, 49 F.3d 528, 531 (9th Cir. 1995), *quoting Tibbs v. Florida*, 457 U.S. 31, 41 (1982)).

Here, the Government never attempted to "supply evidence" to secure a conviction. The Government merely sought clarification of the district court's legal interpretation of Section 2250's requirements without attempting to admit any evidence or examine any witnesses, and then sought dismissal of the indictment based on its own evaluation of the strength of its case in light of that legal interpretation. Thus, the proceeding in the district court was not a "dress rehearsal[]" for prosecutors to secure a conviction, *Currier*, 138 S. Ct. at 2149, and remanding the case will not provide

the prosecution a "second opportunity" to supply inculpatory evidence, *Weems*, 49 F.3d at 531.

Moreover, Lusby was not subjected to the full "embarrassment, expense and ordeal" that accompanies a full trial. *Serfass*, 420 U.S. at 388. A judge's issuing a ruling on a question of law, without any attempt to make factual findings regarding outstanding factual issues, is not itself a trial. *See Olson*, 751 F.2d at 1128. In fact, in the same order in which the district court ultimately clarified its understanding of the statute's interstate commerce requirement, the district court also indicated that Lusby's trial (the mechanism for resolving outstanding factual issues) was still scheduled to commence on a later date. The proceedings concluded when, in advance of that date, the district court agreed to the Government's request for dismissal in light of its ruling. "When a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial." *Serfass*, 420 U.S. at 391.

It is clear that "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Id.* at 387; *Olson*, 751 F.2d at 1128 (explaining that risk of being found guilty is what implicates the "interests protected by the double jeopardy clause"). Because the district court explicitly avoided making factual findings, including regarding an unresolved factual issue at the "crux" of the case, Lusby was never subject to the risk of being found guilty. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass*, 420 U.S. at 391–92. Holding that jeopardy attached here would violate "the

fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." *Id.* at 393.

Lusby's references to *United States v. Hill*, 473 F.2d 759 (9th Cir. 1972), and *United States v. Patrick*, 532 F.2d 142 (9th Cir. 1976), do not convince us that jeopardy attached. In *Hill*, the defendants were charged with mailing obscene materials. 473 F.2d at 760. The trial court "heard evidence going to the general issue—whether the matter mailed was obscene, a necessary element of the offense." *Id.* at 761 (internal quotation marks omitted). "Having considered the evidence, the court ruled, as a matter of law, that the matter was not obscene," and dismissed the indictment. *Id.* (internal quotation marks omitted). We held that the district court had essentially found the defendants not guilty based on the evidence, and that jeopardy had attached. *Id*. In *Olson*, we subsequently clarified that "the finding of the trial court in *Hill* was an application of law to facts established by evidence which the court received and considered." *Olson*, 751 F.2d at 1129. We distinguished *Hill* from the situation in *Olson*, in which the district court did not engage in "receiving and evaluating evidence and applying it to the question of guilt or innocence" such that there was no "risk of a finding of guilt." *Id.* In the latter situation, we held that jeopardy did not attach. *Id.* The same conclusion applies for the same reasons in this appeal. The district court here did not evaluate any evidence for the purposes of determining whether Lusby was guilty,[5] and Lusby was never at "risk of a finding of guilt." *Id.*

---

[5] It is true that the district court referred to specific facts about Lusby's interstate travel that it had "surmise[d]" from the parties' statements and briefs, and that the court referenced a document Lusby attached to his brief for the proposition that the BOP notified Nevada

In *Patrick*, the defendant was indicted for kidnapping a young woman. 532 F.2d at 144. Patrick conceded both that he "engage[d] in the conduct attributed to him," and that such conduct matched the elements of the offense. *Id.* However, he argued that the defense of necessity applied because he was hired by the parents of that young woman to extricate her from a religious sect and "deprogram" her. *Id.* The Government, for its part, conceded that if the district court were to agree with Patrick that "the mere belief of danger is a defense," it was prepared to "stipulate that the victim's parents believed her to be in some sort of danger," in which case "a finding of 'not guilty' would be entered." *Id.* In short, Patrick and the Government were in agreement that there were "no factual disputes, that the dispute [was] essentially a legal dispute" as to whether the necessity defense applied under those circumstances. *Id.* If the defense applied, Patrick would be acquitted. If the defense did not apply, the parties had made "clear" that they "contemplated that [a] stipulation" regarding "all the facts needed to find [Patrick] guilty" would have been made. *Id.* at 147. To enable the district court to apply the law to essentially undisputed facts, Patrick's counsel made an "offer of proof" that "cover[ed] some 30 pages of the reporter's transcript and incorporate[d] [counsel']s 20 pages of memoranda, together with a number of exhibits," then the government "outlined rebuttal evidence," then the defendant's exhibits "were offered and received in evidence." *Id.* at 145. Upon "weigh[ing] the proffered and admitted facts to determine

about his release from custody. As explained above, however, the district court did not adopt any facts as true or rely upon them to make a determination of guilt or innocence. "To the limited extent that the trial court in this case heard proffers of evidence during the hearing[s] on [Lusby's] motion to dismiss, it did so without subjecting [him] to the risk that he would be found guilty, and thus without affecting the interests protected by the double jeopardy clause." *Olson*, 751 F.2d at 1128.

whether they made out the proffered defense," the district court "ruled that the proffered defense was available, that the proffered facts supported it, and that Patrick was not guilty." *Id.* at 146. We held that jeopardy had attached.

However, unlike *Patrick*, where the district court had the relevant facts before it and made a ruling that was expressly "based solely upon the facts presented to the [c]ourt in the offers of proof of the parties" (*e.g.*, "that the victim's parents believed her to be in some sort of danger"), *id.* at 145, the district court here explicitly acknowledged that it did *not* have before it those facts necessary to determine guilt or innocence. In fact, in addition to stating that it did "not know all the facts underlying Lusby's travel to Arizona and back to Nevada," the district court here explicitly recognized that the parties had a fundamental factual dispute at the "crux" of the case regarding an essential element of the crime, namely "whether Lusby properly registered in Nevada before he was transported to Arizona."

Thus, *Hill* and *Patrick* stand for the proposition that jeopardy may attach where there are no genuine issues of fact and a dispute over whether to dismiss the indictment is capable of being decided as a matter of law because, under those conditions, the defendant can be at risk of being found guilty based on the district court's application of the law to those undisputed facts. As explained above, however, those circumstances do not apply to the dismissal in Lusby's case, in which the district court did not apply the law to any specific set of facts, and Lusby was never at risk of a finding of guilt.

We therefore hold that jeopardy never attached, and thus, we have jurisdiction to consider this appeal.

III.

Turning to the merits, we now decide whether a conviction for violating 18 U.S.C. § 2250(a) requires that the defendant's interstate travel not be legally compelled.[6] The district court reasoned that, if upon Lusby's release from custody in Arizona he faced the choice of either returning to Nevada and "thereby expos[ing] himself to SORNA liability by traveling in interstate commerce," or staying in Arizona and "thereby be[ing] in violation of the terms of [the] Judgment" that directed him to report in Nevada upon his release, Lusby's return to Nevada would have been "legally compelled." Animated by that concern, the district court held that the interstate travel element of SORNA can be satisfied only if the defendant's travel is not "legally compelled." We disagree.

"As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by

_____

[6] Although the district court framed its ruling as holding that there is a "voluntariness element" to the interstate travel element of SORNA, the Government has conceded for purposes of this case that it must prove that Lusby's interstate travel was voluntary, urging us to hold only that the district court erred in the definition of voluntariness that it adopted and that voluntariness should instead mean only that conduct was volitional. Moreover, although the district court defined voluntariness as meaning that the defendant's interstate travel must not be "legally or physically compelled," the Government's opening brief does not challenge the *physical* compulsion aspect of this ruling. In light of the Government's positions, we assume *arguendo* that the Government must prove that Lusby's travel was voluntary (under some definition of that term) and that it must prove the travel was not *physically* compelled, and resolve only the more precise legal issue the parties actually dispute on appeal: whether the Government must, to obtain a SORNA conviction, prove that interstate travel was not *legally* compelled.

the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (internal quotation marks and citations omitted). In relevant part, Section 2250 punishes anyone who: (1) "is required to register under the Sex Offender Registration and Notification Act," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act." 18 U.S.C. § 2250(a). Section 2250 also provides that it is an affirmative defense if "(1) uncontrollable circumstances prevented the individual from complying; (2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) the individual complied as soon as such circumstances ceased to exist." *Id*. § 2250(c).

On its face, the statute does not require that the interstate travel be done in the absence of legal compulsion. Congress's inclusion of an affirmative defense for uncontrollable circumstances—which Lusby does not argue applies here—further supports the interpretation that Congress did not intend to provide an additional unwritten affirmative defense regarding legally-compelled interstate travel. *See, e.g.*, *Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir. 1991) (the doctrine of "expressio unius est exclusio alterius" "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions"); *see also id.* ("if a statute states that a party can invoke an action by [a certain method], such [method] is presumed the exclusive manner in which the action may be invoked").

Absent "a clearly expressed legislative intention to the contrary," statutory "language must ordinarily be regarded as conclusive." *Patterson*, 456 U.S. at 68 (internal quotation

marks and citation omitted). This is because "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." *Id.* at 75, *quoting Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 26 (1977).

We need not go further to dispose of this appeal. But, even if we were to examine congressional intent, Congress made its intent clear: Congress enacted SORNA "to protect the public from sex offenders and offenders against children . . . [by establishing] a comprehensive national system for the registration of those offenders." 34 U.S.C. § 20901. The statute was "designed to make more uniform what had remained a patchwork of federal and 50 individual state registration systems, with loopholes and deficiencies that had resulted in an estimated 100,000 sex offenders becoming missing or lost" to state authorities. *United States v. Kebodeaux*, 570 U.S. 387, 399 (2013) (internal quotation marks and citations omitted). Section 2250 "is embedded in a broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks." *Carr v. United States*, 560 U.S. 438, 455 (2010). Thus, a review of congressional intent reveals that "Congress intended § 2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." *Id.* at 456.

Therefore, the district court's interpretation carving out an exception for legally-compelled interstate travel not only contravenes the plain language of the statute, but it is also inconsistent with clear congressional intent. The district court's interpretation would allow offenders to "slip through the cracks," *id.* at 455, by effectively creating a new

"loophole[]," *Kebodeaux*, 570 U.S. at 399, for offenders traveling across state lines as long as that travel is legally compelled—for example, because it was consistent with the terms of the conditions of their release. Moreover, this "loophole" would even apply to offenders who do not ultimately comply with their release conditions (such as by failing, as Lusby allegedly did, to report to the probation office or appear at a Halfway House). The fact that such a loophole is not found anywhere in the text of the statute and contravenes Congress's express purposes compels a conclusion that no such loophole exists.[7]

In light of the plain language and purpose behind the statute, we hold that a conviction under 18 U.S.C. § 2250(a) does not require that a defendant's interstate travel not be legally compelled. We reverse the order dismissing the indictment and remand with instructions to apply the elements of Section 2250 as written.

**REVERSED AND REMANDED.**

---

[7] The district court discounted the concern about "lost" inmates by explaining that the BOP gives notice to the states upon its releasing convicts. The parties dispute whether Nevada had notice in Lusby's instance, but even if Nevada was notified by the BOP, that is not a compelling reason to limit Congress's clear requirement that the offender must notify the state via the registration system as well. *See Robinson v. Marshall*, 66 F.3d 249, 251 (9th Cir. 1995) (generally, a legislature need not "choose the fairest or best means of advancing its goals").